DART EXPORT CORP., ET AL. *v.* UNITED STATES (No. 4836)[1]

[1] C. A. D. 610.

United States Court of Customs and Patent Appeals, February 21, 1956.

*Henry P. Dart, III* for appellants.

*Warren E. Burger*, Assistant Attorney General and *Richard E. FitzGibbon*, Chief, Customs Section for the United States.

[Oral argument October 5, 1955, by Mr. Dart and Mr. FitzGibbon]

Before O'CONNELL, Acting Chief Judge, and JOHNSON, WORLEY, and COLE, Associate Judges

JOHNSON, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, Second Division, entered pursuant to its decision, Abstract 58434, overruling the protests filed by appellant, Dart Export Corp., which were to the effect that the acceptance by the Collector of Customs of the estimated duties at the time of entry on an importation of "perlon artificial gut" constituted a decision of the collector which was conclusive on the Government after the passage of sixty days, under section 514 of the Tariff Act of 1930, and that a liquidation made after this time period had elapsed was illegal.

The Customs Court held that the action of the Collector of Customs in liquidating the entry more than 60 days after the estimated duties were paid, did not constitute an illegal act. The qustion before this court in its broadest aspect, is whether the Customs Court was correct in so holding.

It appears from the record that the importer, prior to the date of entry, was desirous of finding out the exact classification of the merchandise which was to be imported. Samples which were received from a German exporter, were sent by the importer to the Bureau of Customs in Washington, and a request was made for the classification of the merchandise. The Bureau, in a letter dated February 8, 1951, replied that it was of "the opinion that this merchandise is dutiable at the rate of 20 per cent ad valorem under paragraph 1558, Tariff Act

of 1930, as non-enumerated manufactured articles." The merchandise, also known as "nylon monofilament," was thereafter entered for consumption on July 27, 1951. On the entry papers it was indicated by the importer that the merchandise was dutiable at 20 per centum ad valorem, in accordance with the information received by the importer from the Bureau of Customs, and the duty was paid at this rate at the time of entry.

The record discloses that the importation in question was promptly taken to the appraiser. On August 2, 1951, the merchandise was released to the importer, and a "Customs Form 6431" was sent to the Customs Information Exchange in New York. In this respect, the following testimony of Michel T. Blouin, Examiner of Merchandise at the Port of New Orleans, as examined by appellant's counsel, seems particularly applicable in that it describes the sequence of events which occurred, and the reasons why various steps were taken:

\* \* \* \* \* \* \*

By Mr. Dart:

Q. After August 2, 1951, Mr. Blouin, what action did your office take? A. We submitted Customs Form 6431 to the Customs Information Exchange as to whether the merchandise was correctly invoiced as to the value, or whether any other shipment had been received at any other port of such merchandise.

Q. What was the date of that report? A. 6431 was the same date of examination, August 2, 1951.

Q. When did you receive a reply from the C. I. E. in answer to that form? A. The reply we received April 29, 1952.

Q. What was the nature of the reply? A. There was a delay notice in between that time. The New York Appraiser asked whether or not I knew the manufacturer of the merchandise, and I was in touch with your office, I guess with yourself, and you stated you did not know the manufacturer, and on February 18th, I sent—

Mr. Kozinn: [Government Attorney] What year?

The Witness: February 18, 1952, I sent a follow up notice to New York, not having heard a reply from my 6431. A reply was received on April 29, 1952.

By Mr. Dart:

Q. On April 29, 1952, what did the C. I. E. advise? A. "No record of shipment of these items in New York. Shipment through San Francisco; date of exportation 9/16/51. Regarding classification, in view of C. D. 1366, this office on the date of 1/17/52 requested Bureau ruling. Classification is suspended pending such ruling."

Q. When was the Bureau ruling received by you? A. The Bureau ruling was received on May 19, 1952, C. I. E. 172/52.

Q. What was the substance of that ruling? A. Do you want me to read it?

Q. In general what did it say? A. It goes along to say how they classified the different types of nylon filament under paragraph 1301 and 1312.

Q. What rate of duty? What rate of duty did the Bureau rule that this material was dutiable at? A. It doesn't give the rate of duty in the C. I. E. circular. It gives the paragraph, and the rate of duty based upon deniers. That is under paragraph 1301. Then there was an ad valorem duty under 1312.

Q. After receiving that Bureau report, what action did your office take? A. During the month of March, 1952, we issued a delay notice. This was to ascertain from the importer whether or not he had an exclusive sales right.

Q. That was prior to May. You said the Bureau ruling was received on May 19, 1952. All I want to know is what happened after that date insofar as your office was concerned? When did you make your report to the Collector? A. Before I could return the monofilament at 1301, I discovered that we hadn't extracted a sample from each type, and I requested you to furnish me a sample from the original shipment, whatever sample you did have at the time. Then that was submitted to the Customs Laboratory for ascertaining the denier. The laboratory report was returned to me—it was dated November 26, 1952. There is no date shown as to the date it was received at the Appraiser's. Usually it is received one or two days after the chemist makes the report.

Mr. Kozinn: What was the date of the chemist's report?
The Witness: November 26, 1952.

By Mr. Dart:

Q. When did you request me to furnish you with a sample? A. Your letter was dated November 21, 1952.

Q. That was the date of my reply to your request. When did you request it? A. I am not sure whether it was a verbal request or a written request. There is no record showing a written request.

Mr. Kozinn: Mr. Dart, do you concede that a request was made?
Mr. Dart: Yes. I am simply trying to show it wasn't due to any unnecessary delay on my part.

By Mr. Dart:

Q. Do you remember approximately how long before I furnished the sample? Did I delay unreasonably? A. No, I don't think there was any delay.

Q. Then you reported to the Collector when? A. The merchandise was appraised and forwarded to the Collector on December 2, 1952.

Mr. Dart: No further questions.

CROSS EXAMINATION

By Mr. Kozinn:

XQ. When you take a sample from a case and send your 6431 out to the C. I. E., for what purpose is this done? A. Well, for classification purpose is one reason, and the other for value.

XQ. In other words, you are requesting New York to give you information as to 1, classification, and 2, value; is that correct? A. That is correct.

Mr. Kozinn: No further questions.

RE-DIRECT EXAMINATION

By Mr. Dart:

RQ. Mr. Blouin, you have stated that you are not the classifying officer. Who is the final classification officer? A. The Collector.

Q. The Collector himself? A. Yes.

\* \* \* \* \* \* \*

The following excerpt from the Government's brief, summarizing the testimony of Claude E. Blancq, Jr., is believed to accurately portray the events which occurred after the appraiser's report of December 2, 1952, was received by the collector:

\* \* \* \* \* \* \*

The importer also called as its witness Claude E. Blancq, Jr., the Deputy Collector in charge of the Liquidating Division at New Orleans. Mr. Blancq testified that because the appraisement did not become final until 60 days after the report was filed with the Collector, the entry was not placed in line for tentative liquidation until January 31, 1953 (R. 24). He then testified that a liquidation was not final until it had been verified by the Comptroller of Customs (R. 25). He then stated that the entry was liquidated and liquidation posted on the bulletin in the window of the Liquidating Division on June 23, 1953.

    \*        \*        \*        \*        \*        \*        \*

At the time of liquidation, the merchandise was classified at the rate ·of 45˙ per centum ad valorem under paragraph 1301 of the Tariff Act of 1930 as filaments of synthetic textiles, single over 150 deniers, and a claim for additional duties was made on the importer.

On July 25, 1953, the importer filed a protest against the liquidation of June 23, 1953. This protest did not in any way attack the ·classification of the merchandise made at the time of liquidation, but was presented for the purpose of protesting the claim for additional duties on *"the sole, single issue of date of liquidation, and not on any other ground."* This broadly provided the issue on which the Customs Court rendered its decision.

The main question before this court is whether the acceptance of the estimated duties by the Collector of Customs on the filing of a ·consumption entry is a *decision* of the collector within section 514 ·of the Tariff Act of 1930, *infra*, as to the rate and amount of duty chargeable which becomes final and conclusive at the expiration of :sixty days unless either a protest is filed or unless the Government takes action within this period.

Various sections of the Tariff Act of 1930, § 484 (a) (d), 500, 505, 514, 46 Stat. 722, 729, 732, 734, 19 U. S. C. § 1484 (a) (d), 1500, 1505, 1514 (1952), must be considered in analyzing the foregoing ·question. These sections, insofar as pertinent, read as follows:

Sec. 484 (a)—\* \* \* the consignee of imported merchandise shall make entry ·therefor \* \* \* under such regulations as the Secretary of the Treasury may prescribe. Such entry shall be made at the customhouse within 48 hours \* \* \* after the entry of the importing vessel \* \* \*.

Sec. 484 (d)—Such entry \* \* \* shall set forth such facts in regard to the importation as the Secretary of the Treasury may require for the purpose of assessing duties and to secure a proper examination, inspection, and appraisement, and .liquidation, \* \* \*.

Sec. 500—It shall be the duty of the appraiser under such rules and regulations .as the Secretary of the Treasury may prescribe—

  (1) To appraise the merchandise \* \* \* by ascertaining or estimating the value thereof \* \* \*, any statement of cost \* \* \* in any invoice, affidavit, declaration \* \* \* to the contrary notwithstanding;

  (2) To ascertain \* \* \* the quantities of the merchandise ordered or designated for examination;

  (3) To ascertain whether the merchandise has been truly and correctly invoiced;

  (4) *To describe the merchandise in order that the collector may determine the dutiable classification thereof; and* [Italics added]

(5) To report his decisions to the collector.

Sec. 505— * * * Upon receipt of the appraiser's report and of the various reports of landing, weight, gauge, or measurement the collector shall ascertain, fix, and liquidate the rate and amount of duties to be paid on such merchandise as provided by law and shall give notice of such liquidation in the form and manner prescribed by the Secretary of the Treasury, and collect any increased or additional duties due or refund any excess of duties deposited as determined on such liquidation.

Sec. 514— * * * all decisions of the collector, including the legality of all orders and findings entering into the same, as to the rate and amount of duties chargeable, and as to all exactions of whatever character (within the jurisdiction of the Secretary of the Treasury), and his decisions excluding any merchandise from entry or delivery, under any provision of the customs laws, and his liquidation or reliquidation of any entry, or refusal to pay any claim for drawback, or his refusal to reliquidate any entry for a clerical error * * * shall, upon the expiration of sixty days after the date of such liquidation, reliquidation, decision, or refusal, be final and conclusive upon all persons (including the United States and any officer thereof), unless the importer, consignee, or agent of the person paying such charge or exaction, or filing such claim for drawback, or seeking such entry or delivery, shall, within sixty days after, but not before such liquidation, reliquidation, decision, or refusal, as the case may be, * * * file a protest in writing * * *.

The importer contends that "The Tariff Act of 1930, Section 514, fixes a 60 day period of limitation on 'all decisions' of the collector, and the original assessment of duty at the rate of 20% ad valorem was a 'decision' of the collector." The importer then concludes (after citing Customs Regulation 8.21 which was in effect at the time of entry, and which is based on section 484, *supra*) that "it should be perfectly clear to anyone reading these provisions together that the duty assessed at the time of entry is a 'decision' of the Collector, or his agent, and therefore becomes final and conclusive after the lapse of 60 days under the provisions of Section 514 of the Tariff Act, in the absence of further action by the importer or the Government."

We are of the opinion that the importer's position in the foregoing respect is untenable. It can be readily seen from a combined reading of sections 484 (a) and (d), *supra*, that it is the importer who makes the entry and sets forth the facts which are required for the purpose of assessing the duties at the time of entry. However, section 500, *supra*, provides that the appraiser shall have the duty of: appraising the merchandise and estimating the value thereof, any statement of cost in any invoice to the contrary notwithstanding; of describing the merchandise in order that the collector may determine the duitable classification thereof; and of reporting his decisions to the collector. In view of these provisions in the statute, we can hardly visualize that the assessment of duties at entry based on information provided by the importer is final and conclusive on the Government if the Government takes no action within 60 days of the date of entry. The foregoing sections of the tariff act, when taken together, clearly indicate that the classification made on entry, which is based on the

importer's information, is not final, and that there can be no final classification until the appraiser's report is received by the collector. Thus these sections of the Tariff Act seem to refute appellant's contention that the assessing of duties at the time of entry is a "decision" of the collector, within the meaning of section 514, *supra*, which is final if no action is taken within 60 days.

In view of the special circumstances in this case, can the action of the collector in accepting the payment of duties at the rate of 20 per centum ad valorem be considered a decision of his which is final within 60 days when the classification of the merchandise as set forth on the entry papers by the importer was predicated on the above-cited letter of the Bureau of Customs? The opinion relative to classification, as set forth in said letter, was based, according to the record, on a sample of merchandise which was obtained from the German exporter. However, section 500, *supra*, provides that the appraiser must describe the imported merchandise in order that the collector may determine the dutiable classification thereof. Thus, had the collector accepted the classification of the merchandise at the time of entry without going through the step of appraisement, he would have been acting contrary to section 500, *supra*, since he would have been in effect relying on this information for classification purposes without ever having considered the description furnished by the appraiser.

In view of the foregoing provisions of the statute, we cannot see how a final classification of merchandise can be made prior to the receipt of the appraiser's report, this, in essence, being what the importer contends should be done in the present case.

At this point, we must also consider section 505, *supra*, as it ties in with both section 514, *supra*, and the facts of the present case. This section provides for liquidation of an entry on receipt of the appraiser's report, and for the collection of increased duties or refund of any excess duties deposited as determined on such liquidation. This portion of the statute is applicable to the present situation. It is to be noted that the official papers in this case not only showed that the original classification of the merchandise was in error, as determined after appraisement, but also that there was an excess quantity of merchandise not reported by the importer. In the latter respect, the following notation appears on the invoice, apparently made by the appraiser.

"Excess: 7 spools. .25 mm dia. Mist Green @ .21 per spool. Apparently no intent to defraud. (Signature illegible)."

Thus since section 505, *supra*, clearly provides for the collection of additional duties or refund of excess duties deposited, the importer cannot argue that duties should not be paid for merchandise which was not declared on the entry. Obviously there is no such argument

in the present case. However, the argument is of a similar tenor inasmuch as it is contended that the classification of merchandise which was made on entry is a "decision" of the collector which cannot be changed after 60 days, even though the appraiser under normal circumstances may not yet have had an opportunity to inspect the merchandise and forward his report to the collector within this time period. It is quite certain that the importer would not refuse to take money back which he paid as excess duties through error or mistake on the ground that all of these transactions become final 60 days after entry in the absence of a protest or of action by the collector. By the same reasoning, we cannot see why the Government should be precluded from determining the proper classification, amount, and value in the due course of events after entry in order to obtain the proper amount of duty, this being provided for by section 505, *supra*. To give section 514, *supra*, the meaning urged by the importer would render section 505, *supra*, meaningless. This obviously is not in accordance with the rule of statutory construction that the entire context of a statute must be considered and every effort be made to give full force and effect to all language contained therein.

Section 505, *supra*, further provides that after receipt of the appraiser's report the collector shall liquidate the "rate and amount" of duties to be paid. In view of this, it can hardly be visualized that the assessment of estimated duties at the time of entry, that is, prior to the time of appraisement, is a final liquidation of the entry.

The counsel for appellant cites many cases in support of his argument. In *Davies* v. *Miller*, 130 U. S. 284 (1888), which we consider inapposite, a question arose under Rev. Stat. § 2931 as to whether the period allowed for filing a protest against the decision made by the collector at the time of entry upon the rate and amount of duties extends from the time of that decision, or only for the period of ten days from the date of the final ascertainment and liquidation of the duties as stamped on the entry. The court held that a protest could be made prior to final liquidation. See *Merritt* v. *Cameron*, 137 U. S. 542, 549 (1890). Appellant summarizes the holding of this case as follows: "The case is noteworthy *as it found the fixing of estimated duties to be a protestable 'liquidation' of the Collector.*" However, that case does not state that the collector cannot liquidate the entry subsequent to the payment of estimated duties. In fact, the contrary is brought out by the following portion of that case at page 288:

\* \* \* \* \* \* \*

But the matter to which the notice of dissatisfaction applies is the decision of the collector on the rate and amount of the duties; the whole purpose of the notice is to give the collector opportunity to revise that decision; and that purpose is as well accomplished by giving the notice as soon as the goods have been entered and the duties estimated by the collector, as by *postponing the giving of the notice*

*until after the final ascertainment and liquidation of the duties has been made and stamped upon the entry.* [Italics added.]

\* \* \* \* \* \* \*

It is to be noted that this paragraph clearly recognizes that the Government, according to the practice followed at that time, and which is still the practice at the present time, can make a "final ascertainment and liquidation" of an entry. In short, all that *Davies v. Miller, supra,* held was that the importer could file a protest prior to final liquidation. This is no longer the law. Section 514, *supra.* Nowhere in that decision does it state that the Government is bound by the assessment of duties made at the time of entry; in fact, it completely refutes this idea.

Appellant also relies on *Merritt v. Cameron, supra.* We think that this case refutes rather than supports appellant's basic contention. We believe that the following portion of that case which appears at page 551, fairly summarizes the holding of the case:

\* \* \* \* \* \* \*

Upon a careful examination of the question at issue, we are of opinion that the ascertainment and liquidation of the duties upon merchandise entered in bond for warehouse may take place at any time after the original entry of the merchandise, and that it is not required to be delayed until the importer chooses to withdraw his goods for consumption. The ten days referred to in section 2931, [Revised Statutes] within which the importer is allowed to protest, begin to run upon such ascertainment and liquidation of the duties; and, therefore, the protest in the case at bar was too late.

\* \* \* \* \* \* \*

The Court also stated at page 550:

\* \* \*, we think the ascertainment and liquidation of the duties on merchandise entered in bond for warehouse should follow, in the regular course of business, as soon after the entry as is convenient, just as in the case of merchandise entered for immediate consumption. \* \* \*

That case related to the question of whether goods entered for warehousing should be liquidated on their withdrawal from the warehouse, this being answered in the negative. In this respect that case is not analogous to the present case. However, that case is valuable in the respect that it does show, as does *Davies v. Miller, supra,* that the administrative practice at that time was to allow the collector to make a liquidation at any time after entry that was convenient. This, as we have discussed above, is the practice under the present sections of the statute, and refutes appellant's argument that the assessing of estimated duties at entry is a decision of the collector which is final after 60 days.

*Belford v. Scribner,* 144 U. S. 488 (1891), cited by appellant, is completely inapposite since it relates to a copyright matter. That case cited *Davies v. Miller, supra,* at page 505 for the purpose of adopting the court's reasoning with respect to the interpretation of a copyright statute, and nothing more.

*Saltonstall* v. *Birtwell*, 164 U. S. 54 (1896), cited by appellant's counsel, appears to be detrimental to his contention. In that case, an importer sued the Collector of Customs to recover certain duties alleged to have been overcharged on imported goods. The question in that case was whether the importer gave timely notice of protest and dissatisfaction with the decision of the collector. It is stated in that case at page 66, "The record discloses that when the gross estimates were made, as provided in section 2869 of the Revised Statutes, the importer paid the amounts thereof, and that subsequently, when the duties on the respective invoices were liquidated, protests in writing in the form required were filed." The Government's contention, that the protests, to be efficacious, should have been made at or before the time the payments were made according to gross estimates, was rejected. At page 70, the court stated, " 'Payment under protest' means a transaction where protest has been made in accordance with the requirement of section 2931, [within 10 days after liquidation] and, not 'at or before payment' of the estimated duties." Again, we might add, this clearly refutes appellant's contention that the assessing of estimated duties, even at that time, was a decision of the collector which was final after the passage of a certain time period but before the liquidation of the merchandise.

The importer has cited other cases in his brief. We have analyzed all of them, and are of the opinion that they are so remote from the basic question in this case that it is inadvisable to attempt to distinguish them in this opinion.

There are other cases which support our conclusion. The case of *United States* v. *B. Holman, Inc.*, 29 C. C. P. A. (Customs) 3, C. A. D. 164, possesses facts which are different from those of the case at bar. Yet there is certain language in that case which we deem quite pertinent. It is stated at page 14:

* * * all decisions of the collector involved in the ascertaining and fixing the rate and amount of duties chargeable against imported merchandise entered for consumption are merged in and become a part of a legal liquidation, and it is a legal liquidation only * * * against which a protest will lie. * * *

This language appears to crystallize the intent of the above-discussed sections of the statute, and we believe that it is quite applicable to the present case in that it refutes appellant's contention that the assessment of duties at entry is final if no action is taken relative thereto within 60 days.

The case of *United States* v. *DeRivera*, 73 Fed. 679 (C. C. S. D. N. Y. 1896), possesses a factual situation which is very similar to the present case. In that case iron ore was imported in 1881, and a duty was paid at entry. In 1890, the collector increased the duty. The importer claimed that the payment made at the time of entry was a liquidation, and since more than a year elapsed from the time of original payment

of duties, the original payment was final and conclusive. The court held since liquidation was not complete until the collector had acted eight years later, and since there was no provision of law requiring the collector to liquidate within any particular time period, the importer was liable for the additional duties assessed at liquidation. We know of no case in which that case has been overruled, nor are we aware of any subsequent statutory enactment which renders the law of that case obsolete. In fact, the *DeRivera* case has been followed in the following cases: *Abner Doble Co.* v. *United States*, 119 Fed. 152 (9th Cir. 1902); *Franklin Sugar Refining Co.* v. *United States*, 144 Fed. 563 (C. C. D. Pa. 1906); and *Pacific Creosoting Co.* v. *United States*, 196 Fed. 35 (9th Cir. 1912).

In summary, we believe that all of the above-cited portions of the statute set forth a rather clear picture of procedure which is to be followed in the importation of merchandise. It is in the light of all of the portions of the statute, that section 514, *supra*, should be interpreted. This brings us back to the interpretation of section 514 contended for by appellant, namely, that the original assessment of duty at entry at the rate of 20% ad valorem is a "decision" of the collector which is final after 60 days. To place such an interpretation on section 514, *supra*, would in effect render the other above-cited portions of the statute meaningless. This is contrary to the well-settled rule of statutory construction that for the purpose of ascertaining the intention of Congress, the entire context of the statute must be considered and every effort made to give full force and effect to all language contained therein. *Nestles Food Co. (Inc.)* v. *United States*, 16 Ct. Cust. Appls. 451, 455; *S. H. Kress & Co.* v. *United States*, 22 C. C. P. A. (Customs) 421, 424. Furthermore, appellant's contention is contrary to applicable case law. In view of the foregoing, we therefore hold that the assessing of duties at the time of entry was not a "decision" within section 514, *supra*, which was final and conclusive after 60 days had elapsed which would deprive the Government of the right to liquidate the entry at a subsequent date.

In addition, counsel for the importer contends that "If the collector may liquidate and assess duties 'at any time,' the Tariff Act of 1930 is unconstitutional insofar as it purports to authorize such procedure." Before analyzing the reasons which have been presented in support of the foregoing contention, it must be stated that under the tariff act of 1874, it was held that the law prescribes no time limit within which the collector shall make his original liquidation. *Vitelli & Son* v. *United States*, 7 Ct. Cust. Appls. 243, 256, T. D. 36544, *reversed on other grounds*, 250 U. S. 355 (1918). Also see *United States* v. *DeRivera*, *supra*, at page 680, wherein it is stated, "Under the statute, moreover, the collector may 'liquidate' whenever he pleases. It may be a week after the goods arrive, or it may be eight years, as it was in this case;

* * * ." At the present time, under the Tariff Act of 1930, there is still no provision in the statute setting forth a time limit for the collector to make his liquidation.

The reasons presented by the importer in support of the foregoing contention of unconstitutionality, do not, in our opinion, support it. The importer claims there has been a deprivation of a right to a hearing, and that it is fundamental that there can be no deprivation of property without the right to a hearing. The facts of this case show that there has been no denial of a hearing. The importer had his day in court below, Abstract 58434, and we are reviewing that decision at the present time. It has been held that at times a preliminary decision by an agency is a step in an administrative proceeding, and no hearing at the preliminary stage is required by due process so long as the requisite hearing is held before the final administrative order becomes effective. *Ewing* v. *Mytinger & Casselberry*, 339 U. S. 594, 598 (1949). Where only property rights are involved, the mere postponement of the judicial enquiry is not a denial of due process, if the opportunity given for the ultimate judicial determination of liability is adequate. *Phillips* v. *Commissioner*, 283 U. S. 589, 596–597 (1930). In the present case, property rights are involved, and there is no question that there has been an adequate opportunity given for the ultimate judicial determination of liability for import duties. Consequently, in our opinion, there has been no denial of due process.

Relative to the contention that the statute is unconstitutional, the importer further argues that the Government's "interpretation of the statute renders it invalid for the further reason that it imposes a burden on the importer that is unreasonable, arbitrary, and capricious, in that it makes the business of importing so hazardous and risky that many potential importers are prevented from engaging in foreign trade. Thus the importer or prospective importer is deprived of his right to engage in a business of his own choosing." Aside from the fact that this argument is speculative, we have serious doubt as to whether appellant is in a proper position to question the constitutionality of the statute. To raise the constitutional question, the allegedly injured party must show that the statute operates to deprive him of a constitutional right. *Aikins* v. *Kingsbury*, 247 U. S. 484, 489 (1917). The "right" relied on by appellant is the alleged *right to engage in foreign trade*. In *United States* v. *DeRivera*, *supra*, it was stated, "The laws of the United States in regard to the liquidation and collection of duties upon imports are evidently constructed upon the theory that the citizen who imports goods has no rights at all, * * *." Furthermore, in *Buttfield* v. *Stranahan*, 192 U. S. 470 (1903), it was stated at page 493, "* * * it is not to be doubted that from the beginning Congress exercised a plenary power in respect to the exclu-

sion of merchandise brought from foreign countries; * * *." It is further stated at page 493:

\* \* \* \* \* \* \*

As a result of the complete power of Congress over foreign commerce, it necessarily follows that no individual has a vested right to trade with foreign nations, which is so broad in character as to limit and restrict the power of Congress to determine what articles of merchandise may be imported into this country *and the terms upon which a right to import may be exercised. * * *.*" [Italics added]

Therefore, since Congress does have the plenary power to determine the terms on which the right to import may be exercised, and since the terms set forth in the statute have, in our opinion, been properly interpreted, we cannot see where appellant has been deprived of any right, and we are of the opinion that appellant cannot therefore question the constitutionality of the statute on this ground.

The importer also argues that the imposition of additional duties under the statute at the time of liquidation is a "case of retroactivity so arbitrary, capricious, and unreasonable as to violate the requirement of due process." It is our view that this argument is not well founded. We cannot see where the imposition of additional duties at the time of liquidation is retroactive in an arbitrary manner, as urged by appellant, because the statute itself gives ample notice that there may be a change from the duties assessed at entry at the time of liquidation.

The importer has presented still another argument as follows: "If the collector may liquidate more than 60 days from the date of entry, he may not delay indefinitely but must liquidate within a 'reasonable time.' Two years was not a reasonable time in the present case." Appellant argues that the reason two years between the time of entry and the date of liquidation was unreasonable in this case was because there was very little investigative work done by the collector during this period, and that the intervening delays were entirely unexplained. However, appellant has not shown that there was any departure from the usual administrative practice as defined by the applicable statutes. While the testimony in the record shows that any delays which occurred prior to liquidation were not a result of the importer's action, this is far from a showing that there were unreasonable delays on the part of the collector, as appellant would have us believe. It is our opinion that the facts of the present case show that liquidation occurred in the due course of events after entry, and therefore not at an unreasonable time after entry. Furthermore, the reasonableness of the time of liquidation is not a factor to be considered in this class of cases since, according to the interpretation given previous tariff statutes, there is no time limit within which the collector shall make his original liquidation, *Vitelli & Son* v. *United States, supra; United*

*States* v. *DeRivera, supra.* This, as far as we know, is still the law under the Tariff Act of 1930.

For the foregoing reasons, the judgment of the Customs Court is *affirmed*.

WORLEY, J., concurs in the conclusion.