PIMA WESTERN, INC., Plaintiff,

v.

The UNITED STATES, Defendant.

**Slip Op. 96–17.**
Court No. 92–04–00285.

United States Court of
International Trade.

Jan. 16, 1996.

Stein Shostak Shostak & O'Hara, Washington, DC, Steven B. Zisser, Los Angeles, CA, Bruce N. Shulman, and Scott Rosenow, Washington, DC, for Plaintiff.

Frank W. Hunger, Assistant Attorney General; Joseph I. Liebman, Attorney–In–Charge, and Susan Mansfield, International Trade Field Office, Civil Division, Dept. of Justice, Commercial Litigation Branch, for Defendant.

## OPINION

WALLACH, Judge.

### I

### INTRODUCTION

Plaintiff, Pima Western, challenges the classification of oleoresin of paprika formulated for use as a food coloring and imported into the United States from Mexico. The Customs Service classified the product under the Harmonized Tariff Schedule of the United States ("HTSUS") as "Coloring matter of vegetable or animal origin (including dyeing extracts but excluding animal black), whether or not chemically defined; preparations as specified in note 3 to this chapter based on coloring matter of vegetable or animal origin [heading 3203.00]: ... Other" This subheading, 3203.00.50, carries a tariff of 3.1% ad valorem.

Pima Western asserts that the classification is incorrect. It claims that the product should be classified as "Essential oils (terpeneless or not), including concretes and absolutes; resinoids; concentrates of essential oils in fats, in fixed oils, in waxes or the like, obtained by enfleurage or maceration; terpenic by-products of the deterpenation of essential oils; aqueous distillates and aqueous solutions of essential oils [heading 3301]: ... Resinoids: ... Prepared oleoresins consisting essentially of nonvolatile components of the natural raw plant [subheading 3301.30]"[1]. Pima Western points out that this subheading has a statistical suffix for "Paprika" [3301.30.10.10]. Such goods, if imported from Mexico, are free of duty.

The parties have submitted competing motions for summary judgment based on stipulated facts. For the reasons that follow, the

---

1. The Court notes that Congress amended HTSUS 3301.30 in 1995, placing "extracted oleoresins" under subheading 3301.90.10. Given the earlier dates of entry and liquidation, this later amendment is not relevant.

Court denies Pima Western's motion, grants the government's motion and enters a final judgment in favor of the United States.

## A

## JURISDICTION LIES PURSUANT TO 28 U.S.C. § 1581(a)

The Customs Service liquidated the products at issue on January 25, 1991. Pima Western filed a timely protest on February 19, 1991. 19 U.S.C. § 1514(c)(3) (1994). The Customs Service denied the protest on October 30, 1991. Pima Western filed its summons timely on April 24, 1992. 28 U.S.C. § 2636(a) (1988). These jurisdictional prerequisites having been satisfied, this Court has jurisdiction pursuant to 28 U.S.C. § 1581(a) (1988).

## B

## SUMMARY JUDGMENT IS APPROPRIATE BECAUSE THERE IS NO GENUINE ISSUE OF MATERIAL FACT

The Court may grant a motion for summary judgment "if the pleadings ... and admissions on file ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." USCITR 56(d). Here, the parties have stipulated to the material facts.

■ The meaning of tariff terms is a question of law, while their application to a particular product is a question of fact. *E.M. Chem. v. United States,* 9 Fed.Cir. (T) 33, 35, 920 F.2d 910, 912 (1990).

■ Pursuant to 28 U.S.C. § 2639(a)(1), the Customs Service classification in this case is entitled to a presumption of correctness, and the burden of proof that it is not correct lies with Pima Western. *E.g., Lynteq, Inc. v. United States,* 10 Fed.Cir. (T) ——, 976 F.2d 693, 696 (Fed.Cir.1992). The Court "must consider whether the government's classification is correct, both independently and in comparison with the importer's alternative." *Jarvis Clark Co. v. United States,* 2 Fed.Cir. (T) 70, 75, 733 F.2d 873, 878, *reh'g denied,* 2 Fed.Cir. (T) 97, 739 F.2d 628 (1984).

## II

## MATERIAL FACTS

The parties' Stipulation of Facts In Lieu of Trial states that Pima Western's imported prepared oleoresin of paprika consists essentially of nonvolatile components chemically extracted from dried, ground pods of red ripe chili peppers (capsicum annum). Stipulation ¶¶ 5, 6. Oleoresins of paprika can be formulated for coloring or flavoring purposes. Stipulation ¶¶ 7–10, Plaintiff's Memorandum In Support of Motion for Summary Judgment at 6. The oleoresin at issue is used primarily for coloring food, *e.g.,* to make otherwise unappetizing raw beef look red and fresh. Stipulation ¶ 10. Indeed, the sample bottle that Pima Western placed in evidence at oral argument of these motions is labeled "PAPRIKA OLEORESIN, **40,000 Color Units**". Plaintiff's Exhibit 1 (emphasis added). The oleoresin was grown and processed in Mexico. Stipulation ¶ 11.

## III

## DISCUSSION

## A

## OLEORESIN OF PAPRIKA FORMULATED AS COLORING MATTER IS PROPERLY CLASSIFIED UNDER HTSUS 3203.00.50

■ Rule 1 of the General Rules of Interpretation [GRI] of the HTSUS is the starting point for analysis of classification under the HTSUS. It provides:

The ... titles of sections, chapters and sub-chapters are provided for ease of reference only; for legal purposes, classification shall be determined according to the terms of the headings and any relative section or chapter notes and, provided such headings or notes do not otherwise require, according to the following provisions [indicating GRI 2, 3, *et seq.*].

When the plain language of the heading selected by Customs and that suggested by Pima Western is compared to the parties' agreed description of the product as an oleoresin coloring substance derived from a

plant, both headings appear to describe Pima Western's product. It is both a "preparation ... based on coloring matter of vegetable ... origin", HTSUS 3203, and a "resinoid", HTSUS 3301. Were that the extent of the Court's initial review, it would conclude that they are both applicable *prima facie* and resort to the General Rules of Interpretation that come after GRI 1.

GRI 1, however, requires the Court to review section and chapter notes to determine fully the headings' meanings. Note 3 to Chapter 32 provides in relevant part as follows:

> Heading[ ] 3203 ... appl(ies) also to preparations based on coloring matter ... of a kind used for coloring any material or used as ingredients in the manufacture of coloring preparations....

■ In determining the entire scope of Heading 3203 indicated by this Chapter Note, the Court may examine relevant Explanatory Notes.

■ The Explanatory Notes generally are indicative of the proper interpretation of the HTSUS, although they are not legally binding on the United States. *E.g., Lynteq,* 976 F.2d at 699. They were prepared by the Customs Cooperation Council ("CCC") to set forth its official interpretation of the Harmonized Tariff System, which the HTSUS embodies. Report of the Joint Committee on the Omnibus Trade and Competitiveness Act of 1988, H.Conf.R. No. 576, 100th Cong., 2d Sess. at 549; *Ugg Int'l, Inc. v. United States,* 17 CIT 79, 83–84, 813 F.Supp. 848, 853 (1993). "They provide a commentary on the scope of each heading of the Harmonized System and are thus useful in ascertaining the classification of merchandise under the system." Report of the Joint Committee on the Omnibus Trade and Competitiveness Act of 1988, H.Conf.R. No. 576 at 549.[2]

Where the United States has adopted headings, subheadings, and related chapter notes verbatim from the CCC's version, the CCC's Explanatory Notes are especially helpful in interpreting the HTSUS, albeit not dispositive. *See Ugg Int'l, Inc.,* 813 F.Supp. at 853 ("In this case, the fact [that] Congress adopted the essential terms of Chapter 43, Explanatory Note 1 in Chapter 43, Note 1 suggests [that] Congress intended to adopt the [CCC]'s interpretation...."). That is the case with the headings, subheadings and chapter notes of Chapters 32 and 33 relevant here. *See* Explanatory Notes to Harmonized Nomenclature Ch. 32, 33. Therefore, the Court refers to the Explanatory Notes to Chapters 32 and 33 to aid its understanding of the analogous Chapter Notes and headings in the United States schedule.

Explanatory Note 33.01(A) sets forth the products that are intended to come under the rubric "Resinoids":

> Resinoids are products used mainly as fixatives in the perfume, cosmetic, soap or surfactant industries.... Certain products obtained by organic solvent extraction or extraction by gas under pressure and marketed as "prepared oleoresins" or spice oleoresins, consisting essentially of the non-volatile components (resins) of the natural raw plant materials (e.g., spices and herbs), also fall in this heading. These products are used principally as flavouring agents in the food industry.

The Explanatory Note thus contemplates that oleoresins of paprika formulated for use as flavoring agents are classifiable under heading 33.01. It treats oleoresins used as coloring agents, however, quite differently:

> The heading [33.01] also **excludes:**
>
> (a) Natural oleoresins **(heading 13.01).**
>
> (b) **Prepared oleoresins used as colouring matter (heading 32.03).**

2. Counsel for Pima Western suggested at oral argument that the Explanatory Notes do not apply to classifications at the eight-digit subheading level. He reasoned that since the CCC's Harmonized System goes to only six digits, the CCC's interpretive aids are similarly limited, and therefore inapplicable here. The Court disagrees. The eight-digit level of classification is subsidiary to, not an expansion of, the six- and four-digit levels. If the Explanatory Notes offer guidance

that a product should be excluded from a four-digit heading or six-digit subheading, one can properly infer that the product is excluded from the eight-digit subheading. Of course, if the eight-digit subheading, a United States enactment, is at odds with an Explanatory Note, a non-binding CCC promulgation, then the Court would be required to apply the eight-digit subheading without regard to the Explanatory Note. That is not the case here.

Explanatory Note 33.01(A)(a)(b) (emphasis in original and added).

Pima Western's product is a prepared oleoresin used as a food coloring. Stipulation ¶¶ 4–10, Plaintiff's Exhibit 1. Therefore, the Court concludes that the HTSUS headings and Chapter Notes call for classification of this oleoresin of paprika under heading 3203, and that classification under HTSUS heading 3301 would be incorrect.

## B

### BECAUSE CLASSIFICATION IS COMPLETE UNDER GRI 1, THE COURT DOES NOT UNDERTAKE A SPECIFICITY ANALYSIS

■ Pima Western's primary argument is that HTSUS 3301.30.10 is more specific than HTSUS 3203.00.50.[3] Pursuant to GRI 3(a), the more specific heading is preferred. Pima Western's argument is flawed, but it need not be reached in any event. When, as here, the Headings and Chapter Notes themselves are dispositive, GRI 1 governs, the Court does not reach GRI 3(a), and it does not undertake a specificity analysis.

■ By its terms, GRI 1 refers the Court to the analytical methods described in subsequent rules *only* "provided such headings or notes do not otherwise require...." In other words, *only* when the Headings and the Chapter and Section Notes do not themselves determine classification does one look to the subordinate GRI's in the HTSUS hierarchy. GRI 1; "Classification of Goods Under General Rule of Interpretation 1 of the Harmonized System", Customs Service General Notices, O.C.O.D. 89–1; *see also Sanwa Foods, Inc. v. United States,* 18 CIT ——, slip op. 94–76 at 4–5, 1994 WL 194108 (May 10, 1994). This conclusion is reinforced by the terms of GRI 3. It applies when "goods are, *prima facie,* classifiable under two or more headings....". Here, the goods are not classifiable under two or more headings after the relevant Chapter Notes are ana-

lyzed in light of the relevant Explanatory Notes.

For these reasons, Pima Western's—and the government's—discussion in the briefs of the relative specificity of headings, and distinctions between *eo nomine* and use provisions, is not relevant to the Court's decision. A discussion of their substance would be *dictum,* in which the Court here declines to indulge.

## C

### WHEN GRI 1 ANALYSIS OF THE HEADINGS IS DISPOSITIVE, THE COURT DOES NOT PERFORM GRI 6'S ANALYSIS OF SUBHEADINGS

■ Similarly, Pima Western's lengthy argument comparing subheadings 3203.00.50 and 3301.30.10 is beside the point. GRI 1 and GRI 6 instruct the court to classify products first according to the HTSUS headings. Only if the headings are not dispositive are subheadings compared. The Court finds that the headings are dispositive of the dispute here. Therefore, it does not reach the comparison of subheadings.

## D

### THE CLEAR INTENT OF HTSUS DOES NOT SUPPORT PIMA WESTERN'S ASSERTED CLASSIFICATION

■ Pima Western also argues that the clear and literal intent of the HTSUS supports the classification that it seeks. Tariff acts must be construed to carry out the intent of the legislature, which is determined initially by looking at the language of the statute itself. *Nippon Kogaku (USA), Inc. v. United States,* 69 CCPA 89, 92–93, 673 F.2d 380, 382 (1982). Moreover, "the entire context of the statute must be considered and every effort made to give full force and effect to all language contained therein." *Dart Export Corp. v. United States,* 43

---

**3.** In its Memorandum In Support of Motion for Summary Judgment, Pima Western purports to quote Heading 3301 as follows: "Heading 3301 provides for 'essential oils *inter alia* prepared oleoresins'." Memo. at p. 5. Heading 3301 contains no language about oleoresins. Counsel should limit quotations to the actual language of the matter being quoted, and make note of the distinction between headings and subheadings, where the actual mention of oleoresins is made. This distinction is necessary for proper interpretation of HTSUS.

CCPA 64, 74, 1956 WL 8339 *cert. denied,* 352 U.S. 824–25, 77 S.Ct. 33, 1 L.Ed.2d 48 (1956). Thus, the Court cannot examine a heading or subheading of HTSUS in isolation to determine its meaning. We must examine it within the context of the entire statute, which here includes not only the headings and subheadings, but also the GRI's, Chapter Notes and Section Notes, *inter alia.* In this context, the intent of HTSUS supports the government's position.

## E

### STATISTICAL SUFFIXES ARE NOT PART OF THE LEGAL TEXT OF HTSUS AND THEREFORE ARE NOT DISPOSITIVE

■ Pima Western argues that since HTSUS 3301.30.10 provides expressly for "prepared oleoresins", and has a statistical suffix for "paprika", HTSUS 3301.30.10.50, Congress intended to include all oleoresins of paprika, eliminating further inquiry here. That argument is invalid.

First, the Court cannot limit its inquiry as Pima Western suggests. To do so would ignore the substantial explanatory material, e.g., the GRI's and Chapter Notes, that Congress included in the HTSUS legislation, and violate the Court's duty to review the statute as a whole. Without repeating it, the broader inquiry above leads to the conclusion that the legislative intent supports the Customs Service's classification.

Second, the existence of the statistical suffix for paprika under subheading 3301.30.10 for oleoresins does not provide conclusive evidence of legislative intent to include the coloring agent at issue here. Statistical annotations, including statistical suffixes, are not part of the legal text of the HTSUS. HTSUS Stat.Notes 2(a), 2(b). They are not included among the appropriate references listed in GRI 1 and in the legislative history of the HTSUS. Therefore, they cannot be applied to forestall the examination of the whole of the HTSUS required of the Court. *See Asta Designs, Inc. v. United States,* 13 CIT 61, 66, 709 F.Supp. 1154, 1158 (1989) (decided under TSUS that the language of a statistical provision cannot be considered an *eo nomine* provision).˙ Looking beyond the statistical suffix, as the Court must, the Court finds that the subheading manifestly does not include oleoresins of paprika formulated as coloring.

The Court notes in passing that Pima Western also erroneously suggests that the statistical suffix for oleoresin of paprika at 3301.10.30.50 would be rendered surplusage if the substance were classified elsewhere. This is not true. In its own brief and at oral argument, Pima Western admitted that oleoresin of paprika is formulated with certain "color and heat" values as a coloring agent, and with different such values as a flavoring agent. Plaintiff's Memorandum In Support of Motion for Summary Judgment at 6. While the matter need not be decided here, it is evident that the statistical suffix could be applicable if an oleoresin formulated as a flavoring agent were classifiable at 3301.10.30 and statistical suffix .50. Thus, it is evident from the HTSUS and the Explanatory Notes that oleoresin of paprika formulated as a coloring agent is classifiable at 3203.00.05, and that this would not necessarily render the statistical suffix surplusage.

## F

### THE COURT NEED NOT REFER TO TSUS IN INTERPRETING HTSUS HERE

■ Finally, Pima Western compares the former Tariff Schedules of the United States ("TSUS") to the current HTSUS to support its argument that legislative intent supports its suggested classification. The Conference Report on the Omnibus Trade Act of 1988 touches upon this issue:

In light of the significant number and nature of changes in nomenclature from the TSUS to the HTS, decisions by the Customs Service and the courts interpreting the nomenclature under the TSUS are not to be deemed dispositive in interpreting the HTS. Nevertheless, on a case-by-case basis prior decisions should be considered instructive in interpreting the HTS, particularly where the nomenclature previously interpreted in those decisions remains un-

changed and no dissimilar interpretation is required by the text of the HTS.

H.Conf.R. No. 576, at 549–50. This Court has, in the past, referred to TSUS to aid the interpretation of HTSUS. *See, e.g., Beloit Corp. v. United States,* 18 CIT ——, 843 F.Supp. 1489, 1495 *et seq.* (1994). There, the reference was undertaken in the course of reviewing legislative history because the HTSUS was ambiguous. *Id.* There is no similar need to resort to the TSUS here because the provisions of the HTSUS at issue are unambiguous. Rather, the HTSUS on its own terms leads to a clear outcome. Moreover, Pima Western itself admits that the nomenclature changed from the TSUS to the HTSUS. The Court therefore finds that comparing the HTSUS with the TSUS is neither necessary nor enlightening.

### CONCLUSION

For the foregoing reasons, the Court denies Plaintiff Pima Western's motion for summary judgment, grants Defendant United States' motion for summary judgment, and enters final judgment in favor of the United States.

### JUDGMENT

This case having come before the Court for decision, and the Court, after due deliberation, having rendered a decision herein; now, in conformity with said decision, it is hereby

**ORDERED, ADJUDGED AND DECREED** that Plaintiff's motion for summary judgment be, and hereby is, denied; and it is further

**ORDERED, ADJUDGED AND DECREED** that Defendant's motion for summary judgment be, and hereby is, granted; and it is further

**ORDERED, ADJUDGED AND DECREED** that the classification of the subject oleoresin of paprika by the United States Customs Service under HTSUS subheading 3203.00.50 is affirmed; and it is further

**ORDERED, ADJUDGED AND DECREED** that each party shall bear its own costs.