**TOY BIZ, INC., Plaintiff,**

v.

**UNITED STATES, Defendant.**

**Slip Op. 98–121.**
**Court No. 94–05–00257.**

United States Court of International Trade.

Aug. 20, 1998.

Singer & Singh (Indie K. Singh and Sherry L. Singer), Valley Stream, NY, for Plaintiff.

Frank W. Hunger, Assistant Attorney General, Joseph I. Liebman, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, U.S. Department of Justice, Civil Division (Mikki Graves Walser) and Office of Assistant Chief Counsel, U.S. Customs Service (Sheryl A. French, of counsel), Washington, DC, for Defendant.

*Opinion*

AQUILINO, Judge.

This case contests denial by the U.S. Customs Service of duty-free entry for merchandise it classified under subheading 9503.49.00 of the Harmonized Tariff Schedule of the United States ("HTSUS") (1992) as "Toys representing animals ...: ... Other". The plaintiff claims that duties at the rate of 6.8 percent *ad valorem* should not have been demanded (and paid) in view of subheading 9902.95.02, which at the time exempted

> Stuffed or filled toys representing animals or non-human creatures, not having a spring mechanism and not exceeding 63.5 cm in either length, width, or height (provided for in subheading 9503.41.10 or 9503.49.00)[.]

1. The item and the package are exhibits C–1 and C–2, respectively, to the declaration of Customs

I

The parties take the position that there are no material facts as to which there is a genuine issue to be tried within the meaning of CIT Rule 56 and have therefore interposed cross-motions for summary judgment. Jurisdiction over this case is pursuant to 28 U.S.C. § 1581(a) and § 2631 *et seq.*, and in the exercise thereof the court has reviewed their submissions, including plaintiff's item and its retail package [1] emblazoned in color with pictures and the name "Ralf!™ The Barking Dog", and concurs that trial is not necessary. Any disagreements can be resolved via the cross-motions, which posit substantive issues that are essentially legal in nature. *See, e.g., Bausch & Lomb, Inc. v. United States*, 148 F.3d 1363 (1998), and the cases cited therein.

Paragraph 5 of plaintiff's statement of material facts describes *Ralf* as

> made of white thick fur-like textile material. Its body, legs and tail are made of this white material. It has brown pads on all four feet. Its ears are made of black fur-like material. It has one black eye, a black muzzle, and a red bandana. The muzzle is fitted with a mechanical noisemaker which, when squeezed sharply, emits a "barking" noise that sounds somewhat like "rrralf." It has a horizontal slit across the abdomen, where a hand can be inserted to make RALF bark and/or move its head like a puppet. Unlike a puppet, however, the inserted hand cannot manipulate any of its limbs, since there is no opening from the cavity to the limbs. In addition, the limbs are stuffed to distention with a nonwoven polyester fiberfill type of material.

The defendant responds as follows:

> Admits ¶ 5, sentences 1–6 and 9. With respect to ¶ 5, sentence 7, admits that the abdomen has a horizontal opening which leads to the hollow torso, neck and head areas. Avers that this opening allows a hand, arm and elbow to fit inside Ralf's body and a hand to fit up in Ralf's head to move or manipulate his head, body and

National Import Specialist Thomas McKenna which is appended to defendant's brief.

mouth like a puppet, and make him bark (by squeezing the sound mechanism located in the muzzle cavity), but denies the remainder of sentence 7. With respect to ¶ 5, sentence 8, admits that the hand cannot be inserted into the ... limbs, since there is no opening from the body and head cavities to the limbs, but denies the remainder of sentence 8. Avers that Ralf has wrap-around arms which wrap around the puppeteer (user), eliminating the need for a stage, and facilitating movement with the puppet in any setting.

Defendant's Response to Plaintiff's Statement of Material Facts, para. 5 (emphasis in original).

These characteristics and plaintiff's plea for duty-free treatment under the HTSUS subheading 9902.95.02 quoted above have engendered three issues for resolution herein, to wit, the meanings of "stuffed" and "filled", plus *Ralf*'s essential measurements.

### A

■ The plaintiff contends that *Ralf* is indeed classifiable under HTSUS subheading 9503.49.00, but also under 9503.41.10 ("Stuffed toys"). Customs does not concur as to that alternative section. *See, e.g., id.,* para. 6. The parties do agree, however, that the term stuffed is not defined in the HTSUS. *See id.* and Plaintiff's Statement of Material Facts, paras. 8. In such a circumstance, a court will "normally construe it in accord with its ordinary or natural meaning." *Smith v. United States,* 508 U.S. 223, 228, 113 S.Ct. 2050, 124 L.Ed.2d 138, *reh'g denied,* 509 U.S. 940, 114 S.Ct. 13, 125 L.Ed.2d 765 (1993), citing *Perrin v. United States,* 444 U.S. 37, 42, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979). And that meaning often can be discerned from dictionaries and other lexicons. Stuffed is the past participle of the verb stuff, which has been defined by one such resource to mean, among other things,

> to fill (a receptacle) to fullness or distention by packing things in: CRAM ... to fill (as one's stomach) to fullness ... to fill (as a cushion or ticking) with a soft material or padding ... to fill out the skin of (an

animal or bird) for mounting ... to fill (as a hole or opening) by packing in material ... [.]

Webster's Third New Int'l Dictionary, p. 2269 (1981). Another, Funk & Wagnalls New Standard Dictionary of the English Language, p. 2403 (1930), indicates to stuff is

> to fill with material specially prepared for such use; as, to *stuff* a cushion; to *stuff* a fowl for cooking.... In taxidermy, to fill out with suitable material (the skin of a bird or beast), and arrange so as to make a lifelike form.

■ As set forth above, the parties agree, and the court finds, that only *Ralf*'s limbs are fully stuffed to distention. Indeed, were he completely stuffed à la the skin of a taxidermized bird or beast, *Ralf* could not be animated by hand in the manner intended by his creator. Be that as it may, given the lack of complete stuffing, the plaintiff commissioned a former chief of the U.S. Customs Technical Branch, Office of Laboratories & Scientific Services, to examine *Ralf.* The resultant "Analysis of a Hand Puppet to Determine the Percent by Weight and by Volume of the 'Stuffed' Versus 'Not Stuffed' Portions to Determine 'Essential Character' "[2] is part of plaintiff's motion for summary judgment.

The court has perused this submission and accepts its findings that 63.5 percent of *Ralf* is stuffed by weight and 70.7 percent by volume. Nevertheless, the court cannot, and therefore does not, concur with the report's conclusion that,

> [b]ecause the stuffed portion of Ralf constitutes the predominant "bulk, quantity, (and) weight" of his components, and because his long, huggable forelegs play a predominant "role ... in relation to the use of the goods," we can see no other conclusion than to consider Ralf to be stuffed for tariff purposes.

Roger J. Crain Report, p. 6. Irrespective of whether tariff purposes are or are not consistent with plain logic, or simple arithmetic, there is an other conclusion, the force of which is at least equally strong in the light of the foregoing defini tion(s) of stuff(ed), not to

---

**2.** Cited hereinafter as "Roger J. Crain Report".

mention the thorough presentation of the Customs National Import Specialist's reasons for his ruling, *e.g.*:

7. A major feature of the RALF toy is the presence of the substantial hollow space designed to accommodate the puppeteer's hand, arm and elbow. The torso or trunk area of the toy animal is completely devoid of stuffing or filling material. There is very little stuffing material in the head portion—a tiny piece in the muzzle area and a thin pad on the back of his head. RALF'S head cavity, however, remains hollow. The plush fabric shell or "skin" serves to create a hollow body cavity or interior compartment. RALF'S hollow body cavity extends from [his] neck to the top of [his] legs and forms the interior compartment that comprises the entire torso or trunk of the toy, and extends upwards from the neck into RALF'S hollow head cavity. Thus, RALF'S head, neck and torso are hollow.

\* \* \* \* \* \*

10. . . . RALF'S tail and ears contain no stuffing or filling. Although the fore and hind legs are stuffed, the stuffing materials used in RALF'S legs do not impart shape and form to RALF'S torso or enter the torso area.

\* \* \* \* \* \*

13. RALF does not have the characteristics of stuffed toys, which have the following characteristics:

a) stuffed toys have three dimenssional sculptored [*sic* ] configurations, and

b) the stuffing material imparts the shape and form of the torso of the animal;

Therefore, the presence and quantity of stuffing material in the toy limbs and head are irrelevant in determining whether a toy is stuffed.

\* \* \* \* \* \*

16. In determining whether or not a toy representing an animal or non-human creature qualifies as "stuffed" for tariff classification purposes, Customs requires the stuffing materials to impart

the shape and form of the article's torso. Customs does not consider the size of the torso, the weight, value, whether other appendages have been stuffed, or the most prominent feature of the toy, in making this determination.

Defendant's Memorandum, Declaration of Thomas McKenna, paras. 7, 10, 13, 16. With such definition(s) and evidence, and this case resting upon the rule that the plaintiff has the burden of persuasion, the court must conclude that it has not been borne on the first issue raised. That is, the Service correctly classified *Ralf* under subheading 9503.49.00, HTSUS.

### B

■ Plaintiff's secondary position is that, if *Ralf* is not stuffed, he is filled. Memorandum of Plaintiff, p. 7. On this point, the court is not automatically at liberty to search for the ordinary or natural meaning because the governing statute itself defined "filled". *See, e.g., W.Y. Moberly, Inc. v. United States*, 924 F.2d 232, 235 (Fed.Cir.1991); *Foodcomm Int'l v. United States*, 19 CIT 1421, 1425, 914 F.Supp. 548, 551 (1995). U.S. Note 6 to HTSUS Chapter 99, Subchapter II (Temporary Reduction in Rates of Duty) (1992) provided at page 99–7:

For the purposes of heading 9902.95.02, the term *"filled"* includes toy figures which are not completely filled or are filled with materials such as plastic beads or crushed nutshells but which otherwise possess the characteristics of toy figures classifiable as *"stuffed"*.

Underscoring in original.

The defendant focuses on the "toy figures which are not completely filled" language, arguing that it

cannot be read in isolation from the remainder of U.S. Note 6 which states that toy figures which are not completely filled must otherwise possess the characteristics of toy figures classifiable as "stuffed." In fact, "the entire context of the statute must be considered and every effort made to give full force and effect to all language contained therein."

Defendant's Memorandum, p. 20, quoting *Dart Export Corp. v. United States*, 43 C.C.P.A. 64, 74, C.A.D. 610, *cert. denied*, 352 U.S. 824, 77 S.Ct. 33, 1 L.Ed.2d 48 (1956); *Pima Western, Inc. v. United States*, 20 CIT ——, ——, 915 F.Supp. 399, 403 (1996). The court agrees that this is the correct approach, but it does not necessarily lead in defendant's direction because of the location and the definition(s) of a key word in the statute, the adverb otherwise, namely:

> **1** : in a different way or manner: DIFFERENTLY ... **2**: in different circumstances: under other conditions ... **3**: in other respects ... [.]

Webster's Third New Int'l Dictionary, p. 1598 (1981). *See* Funk & Wagnalls New Standard Dictionary of the English Language, p. 1752 (1930). Giving this word and all the other language of the statute the requisite full force and effect leads to the conclusion that *Ralf* is "filled". The contrary reasoning of the National Import Specialist is less persuasive on this issue. *See* Defendant's Memorandum, Declaration of Thomas McKenna, paras. 23, 24 *passim*. Again, it is tied to the torso of plaintiff's toy, *viz:*

> ... RALF has no stuffing whatsoever in the torso. Since RALF'S torso is not even partially "stuffed" or "filled," and is completely empty, U.S. Note 6 is not applicable.... In determining whether or not to classify a toy representing an animal ... creature as "stuffed" or "filled" for tariff purposes, the stuffing materials must impart the shape and form of the article's torso; that is it must possess or otherwise possess the characteristics of toy figures classifiable as stuffed.

*Id.*, para. 24, pp. 6–7. Even assuming arguendo the statute on its face is also so tied, this court cannot and therefore does not find that the empty body leaves *Ralf* bereft of the image or form [3] intended by his creator or of characteristics complete stuffing otherwise would have achieved.

**C**

■ The statute also requires that a particular stuffed or filled toy not exceed 63.5 centimeters in either length, width or height to qualify for duty-free entry. The plaintiff admits defendant's allegation that *Ralf* has forearms that measure 35 inches (or 89 cms) from outstretched forepaw to forepaw.[4] But that measurement was not dispositive for Customs. As already indicated, the Service

> denied classification in 9902.95.02, HTSUS, because [*Ralf*] did not meet the "stuffed" or "filled" criteria and was therefore not a stuffed or filled toy as required for eligibility in 9902.95.02.

*Id.*, para. 28. With regard to his dimensions, the National Import Specialist further declares:

> 30. RALF is not imported in a fixed, unadjustable position. Accordingly, I would adjust [him] to the position [he] is most likely and most often to be used, played with or enjoyed. But since RALF is not stuffed, this position is difficult to calculate, unless we measure this puppet hand-supported, it's most likely position, and measure the toy from its highest point to its lowest point, and from out-stretched paw to paw.

> 31. When the hand and arm are inserted in the empty torso and head shell and RALF is supported in a sitting position, RALF measures approximately approximately 16½ inches or 42 cm in height (from the top of the head to the end of the torso where the elbow is inserted) by 22 inches or 56 cm in width (from outstretched forepaw to forepaw). These measurements, by Customs standards[,] are within the statutory maximum (25 inches) required for special duty treatment under HTSUS subheading 9902.95.02. However, I must point out that RALF is not imported in the

**3.** Certainly, the argument at pages 9–10 of defendant's reply memorandum that the "imported toy figure ... does not have any shape to its empty torso" is at odds with but one glance at him, lying on his own, and also with the proffers that his "head, neck and torso are hollow" and "fabric shell serves to create a hollow body cavity or

interior compartment." Defendant's Statement of Material Facts For Which There Is No Issue To Be Tried, paras. 5, 10.

**4.** *Compare id.*, para. 15 *with* Plaintiff's Response, para. 15.

stuffed or filled condition required for this classification in the claimed provision, as [his] puppet torso is empty. If RALF were imported in a truly "stuffed" or "filled" condition, that is, with stuffing/ filling materials in and distending his torso, [his] chest area between [his] long arms would be fully distended as required.... In a fully distended condition, the distance between RALF'S forepaws would measure 35 inches or 89 cm (from outstretched forepaw to forepaw) in length....

*Id.,* paras. 30, 31. The court agrees that *Ralf* best be measured in his "most likely position", which the court has done independently, and which confirms Mr. McKenna's finding that those results "by Customs standards are within the statutory maximum (25 inches) required for special duty treatment under HTSUS subheading 9902.95.02." The court could also concur that, if stuffed and therefore fully extended, *Ralf* could exceed that limit[5] and thus not be free from duty. But, of course, he was not completely filled at the time of entry and thereby well under the maximum dimension(s) in his most likely position.[6]

## II

In view of the foregoing, plaintiff's motion for summary judgment should be granted, and defendant's cross-motion must therefore be denied. Judgment will enter accordingly.

5. It is not clear from physical examination of the merchandise, defendant's exhibit C–1, however, that a stuffed torso would, in fact, engender separation of the forepaws greater than 63.5 centimeters.

6. To the extent *Ralf*'s retail box, defendant's exhibit C–2, is of any moment, the court has

*JUDGMENT*

This case having been duly submitted for decision; and the court, after due deliberation, having rendered a decision herein; Now therefore, in conformity with said decision, it is

ORDERED, ADJUDGED AND DECREED that plaintiff's motion for summary judgment be, and it hereby is, granted in that the merchandise which is the basis of this case, and which was correctly classified by the U.S. Customs Service under subheading 9503.49.00 of the Harmonized Tariff Schedule of the United States (1992), satisfies the criteria for entry free of duty per subheading 9902.95.02 in effect at the time; and it is further

ORDERED, ADJUDGED AND DECREED that defendant's cross-motion for summary judgment be, and it hereby is, denied; and it is further hereby

ORDERED that the U.S. Customs Service reliquidate the entries which are the basis of this case and refund to the plaintiff any duties paid, together with interest as provided by law.

measured it and finds that it is 16 inches long by 11 inches wide by 4½ inches high or deep (or approximately 41 × 28 × 11 centimeters).