**MARUBENI AMERICA CORPORATION, Plaintiff–Appellant,**

v.

**The UNITED STATES, Defendant–Appellee.**

No. 96–1310.

United States Court of Appeals, Federal Circuit.

May 20, 1997.

Richard C. King, Fitch, King & Caffentzis, New York City, argued, for plaintiff–appellant. Of counsel was James Caffentzis.

James A. Curley, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, New York City, argued, for defendant–appellee. With him on the brief were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, Washington, DC, and Joseph I. Liebman, Attorney in Charge, International Trade Field Office, New York City.

Before MAYER, SCHALL, and BRYSON, Circuit Judges.

MAYER, Circuit Judge.

For tariff purposes, what is a hollow, cylindrical, copper product with helical ridges and grooves internally spiraling its length? Is it a "profile" or a "tube or pipe"? Marubeni America Corporation, which imported such a product, appeals the United States Court of International Trade's summary judgment, *Marubeni Am. Corp. v. United States,* 905 F.Supp. 1101 (1995), interpreting Note 1(h) of chapter 74 of the Harmonized Tariff Schedule of the United States and classifying the import as a "profile." We reverse and remand.

*Background*

Subheadings 7411.10.10 and 7407.10.10 of the Harmonized Tariff Schedule of the United States (1990)* The relevant portions of the 1989 and 1990 versions of the Harmonized Schedule were identical. (Harmonized Schedule) respectively imposed a 1.5% duty on refined copper "tubes and pipes" and a 6.3% duty on refined copper "profiles." In part, Note 1(h) of chapter 74 of the Harmonized Schedule defined tubes and pipes to

have "uniform wall thickness" or to be "threaded." Note 1(e) residually defined profiles as " . . . products . . . which do not conform to . . . the definitions of . . . tubes or pipes," among others.

In 1989 and 1990, Marubeni imported a cylindrical, hollow, seamless refined copper product with uniform, circular cross sections and helical ridges and grooves internally spiraling its length. Physically, the product's grooves and ridges rendered its wall thickness non-uniform. Thermodynamically, the grooves and ridges facilitated heat transfer when the product was transformed into air conditioner coils, which carry refrigerants, such as freon. This common application did not use the product's grooves and ridges for attachment or fastening.

The United States Customs Service interpreted "threaded" in Note 1(h) to require not only a physical structure but also a particular function: only products with grooves and ridges used to attach or fasten could be "threaded," it asserted. Accordingly, Marubeni's product was not "threaded." Because the import also lacked uniform wall thickness, Customs deemed it a profile and assessed a 6.3% duty upon each shipment. Marubeni paid the assessments and timely filed corresponding administrative protests, which Customs denied. Consequently, the importer commenced this action in the Court of International Trade pursuant to 28 U.S.C. § 1581(a). Seeking the difference between the duty it paid and the duty it would have paid under subheading 7411.10.10, Marubeni argued that its product was a "threaded" tube. Holding that the common meaning of "threaded" connotes functional as well as physical characteristics, the court entered judgment for the United States and subsequently denied Marubeni's motion for rehearing, *see* 915 F.Supp. 413 (1996). Marubeni appeals.

*Discussion*

Whether Marubeni's import's helical grooves and ridges made it "threaded" necessi-

---

* The relevant portions of the 1989 and 1990 versions of the Harmonized Schedule were identical.

sarily depends upon the word's meaning in Note 1(h) of chapter 74 of the Harmonized Schedule, which we interpret *de novo*. *See Guess? Inc. v. United States,* 944 F.2d 855, 857 (Fed.Cir.1991). Note 1(h) defines tubes and pipes as:

Hollow products, coiled or not, which have a uniform cross section with only one enclosed void along their whole length in the shape of circles, ovals, rectangles (including squares), equilateral triangles or regular convex polygons, and which have a uniform wall thickness. Products with a rectangular (including square), equilateral triangular or regular convex polygonal cross section, which may have corners rounded along their whole length, are also to be taken to be tubes and pipes provided the inner and outer cross sections are concentric and have the same form and orientation. *Tubes and pipes* of the foregoing cross sections *may be* polished, coated, bent, *threaded,* drilled, waisted, expanded, cone-shaped or fitted with flanges, collars or rings.

(Emphasis added.)

The government argues that "[t]he trial court's interpretation of 'threaded' to include both structure and function comports with the common meaning of that term." In particular, the government cites three "reliable sources of lexicographic information" to support its contention. The first source, 18 *McGraw–Hill Encyclopedia of Science and Technology* 329 (6th ed. 1987), defines threading as:

The forming of a ridge and valley of uniform cross section which spiral about the inner or outer diameter of a cylinder or cone in an even and continuing manner. The work must be produced with sufficient uniformity and accuracy so that the resulting threaded part will accomplish its intended purpose of fastening, transmitting motion or power, or measuring.

Under the heading "Screw Threads," the second reference indicates that "[t]he principal use of threads are (1) for fastening, (2) for adjusting, and (3) for transmitting power." W.J. Luzzader, *Fundamentals of Engineer-ing Drawing* 315 (9th ed. 1985). And, also under the heading "Screw Threads," *Encyclopedia Britannica,* vol. 20, p. 92 (14th ed. 1973) reads, in part:

A thread on the outside of a cylinder is an external or male thread; cut on the inside of a hole, as in a nut, it is an internal or female thread. The purpose in using threaded members may be: (1) to join two or more parts together; (2) to transmit power or force; (3) to obtain a mechanical advantage, that is, a large force from a small one; or (4) to transmit motion either rotary to linear or linear to rotary.

The government cautions, moreover, that "[i]f function is to be thrown to the winds ... the meaning of 'threaded' can be burlesqued to the point where it can be said that the spiral grooves of a phonograph record cause that article to be threaded."

Notwithstanding the government's admonition, Note 1(h) allows more than cylindrical "threaded" tubes and pipes. By definition, a product with triangular or rectangular, cross sections may be threaded. Not one of the government's sources contemplates, let alone defines, such threading. The *McGraw Hill Encyclopedia of Science and Technology,* which presupposes but does not necessitate an "intended purpose" for threading, solely refers to threading cylinders and cones. *Fundamentals of Engineering Drawing* and *Encyclopedia Britannica* list possible purposes of screw threads but regard only conical or cylindrical screws. Moreover, the government provides no examples of triangular or rectangular tubes or pipes with threads that fasten parts, transmit force, enhance power, or transmit motion.

The government's question-begging definition is untenable. It takes the narrow definition for "screw threads" and inductively applies its functional requirements to products with shapes that almost certainly preclude functioning as screws. Left without a definition or example of a screw with a triangular or rectangular body, we surmise that such products suffered the fate of the square wheel. "Threaded" in Note 1(h) refers only

to physical form and aptly described Marubeni's product.

### Conclusion

Accordingly, we reverse the judgment of the Court of International Trade and remand the case for further proceedings consistent with this opinion.

*COSTS*

Marubeni shall have its costs.

*REVERSED AND REMANDED.*