CIBA-GEIGY CORP., PLAINTIFF v. UNITED STATES, DEFENDANT

Court No. 95-09-01128

(Decided December 29, 1998)

*Ross & Hardies (Joseph S. Kaplan),* for Plaintiff

*Frank W. Hunger,* Assistant Attorney General; *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice *(John J. Mahon);* Office of Assistant Chief Counsel, International Trade Litigation, United States Customs Service *(Chi S. Choy),* of counsel, for Defendant.

## OPINION

### I

### INTRODUCTION

WALLACH, *Judge:* This dispute concerns the classification by the U.S. Customs Service ("Customs") of five related products—Pergascript Black I-R, Pergascript Blue I-2G, Pergascript Blue I-2R, Pergascript Green I-2GN and Pergascript Olive I-G ("the Pergascripts")—imported by Plaintiff, Ciba-Geigy Corporation ("Ciba-Geigy"), in 1992 and 1993.[1] Plaintiff's Complaint ("Complaint") at ¶ 5; Memorandum In Support of Defendant's Motion For Summary Judgment ("Defendant's Motion") at 1. Customs classified the Pergascripts under Harmonized Tariff Schedule of the United States ("HTSUS") Subheadings 3204.19.40 and 3204.19.50, with respective duty rates of 15% and 20% *ad valorem.*[2]

---

[1] By Court Order dated July 21, 1997, this action was designated a test case, pursuant to USCIT R. 84. By Court Orders dated September 17, 1997, and December 28, 1998, the following actions were suspended under this test case: Court Nos. 98–11–03168, 97–05–00719, 96–12–02783, 96–05–01351, and 95–11–01549.

[2] All HTSUS citations are for those provisions and tariff rates in effect in 1992 and 1993.

1156

Complaint at ¶ 7; Answer at ¶ 7. Heading 3204 covers, *inter alia*, "[s]ynthetic organic coloring matter, whether or not chemically defined" and "preparations as specified in note 3 to this chapter based on synthetic organic coloring matter * * *."

Ciba-Geigy challenges Customs' determination, arguing that the Pergascripts are more properly classified as "inks," other than printing or drawing inks, under Subheading 3215.90.50. Complaint at ¶ 10. Imports under this tariff subheading are subject to a duty rate of 1.8% *ad valorem*. This Court exercises its jurisdiction pursuant to 28 U.S.C. §1581(a).

Currently before the Court is Defendant's Motion for Summary Judgment. The Court finds that as there is no genuine issue of material fact relevant to the classification of the Pergascripts within Heading 3215, this case is ripe for partial summary disposition pursuant to USCIT R. 56. Further, the Court finds that by operation of Note 1(a) to Chapter 32, HTSUS ("Note 1(a)"), the Pergascripts were properly classified by Customs under Heading 3204. There are, however, insufficient facts before the Court to verify that Customs' classification of the Pergascripts within Heading 3204 was correct. Accordingly, the Court denies Defendant's Motion to that limited extent.

II

BACKGROUND

There is no dispute between the parties concerning the basic characteristics of the imported merchandise in question. Both parties agree that the Pergascripts are synthetic organic coloring matter used in the manufacture of carbonless paper. *See* Complaint at ¶ 15; Defendant's Statement of Undisputed Material Facts ("DSUMF") at ¶ 7; Defendant's Motion at 1 & n.3; Memorandum In Opposition To Defendant's Motion For Summary Judgment ("Plaintiffs Response") at 1, 8; Plaintiff's Answers to Defendant's Second Request for Admissions, Admission No. 1 (Exhibit A to Defendant's Motion). Carbonless paper is used in various business forms which require copies and replaces the sheets of carbon paper previously used. Defendant's Motion at 1 n.3. To produce carbonless paper, Pergascript powders are dissolved in, and mixed with, other ingredients to form a dispersion that is coated on one side of a sheet of paper, the back side of which will be the top sheet of the form. *Id.* The top side of the second sheet is coated with an activator. When written on, the pressure causes the two coated surfaces to react in such a way that color is produced. *Id.*

Both parties also agree that Pergascripts are used in making thermographic paper. *See id.* at 1 & n.3; Answer at ¶ 15, Plaintiff's Response at 8; Complaint at ¶ 15. Thermographic paper is used for fax paper and similar products where the application of heat to paper that has been coated with a dispersion of Pergascripts and other materials results in the formation of an image. Defendant's Motion at 1 n.3. In producing both products, the Pergascripts constitute the sole coloring agent. *See id.*

(generally describing how the Pergascripts are used in the manufacture of carbonless and thermographic paper).[3]

In addition to agreeing on the end-uses of the Pergascripts, both parties agree that the Pergascripts are separate chemically defined elements or compounds. *See* DSUMF at ¶ 4; Plaintiff's Response at 1.[4] In fact, both parties even agree that, based on these characteristics, the Pergascripts are properly classified in Chapter 32 HTSUS, and that the Pergascripts are described in HTSUS Heading 3204. Plaintiff's Response at 1.

Notwithstanding these areas of agreement, Plaintiff argues that the Pergascripts are more properly classified as "inks" under Heading 3215, for the reasons discussed below. In response, Defendant argues that Note 1(a) to Chapter 32 precludes classification of separate chemically defined compounds (such as the Pergascripts) under Heading 3215. It is on this ground that Defendant has moved for summary judgment.

## III

## ANALYSIS

### A.

#### PARTIAL SUMMARY JUDGMENT IS APPROPRIATE BECAUSE THERE IS NO GENUINE ISSUE AS TO ANY MATERIAL FACT

Under USCIT R. 56(d), summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

In resolving disputes concerning tariff classification, courts have generally referred to their analysis as a two-step process: first, construe the relevant tariff classifications; and second, determine under which of the properly construed tariff headings the merchandise at issue falls. *Bausch & Lomb Inc. v. United States*, No. 97–1333, 1998 WL 381444, at *1 (Fed. Cir. July 8, 1998). The first step in this process is a question of law, while the second step is generally referred to as a factual inquiry. *Id.* As the Court of Appeals for the Federal Circuit recently noted in *Bausch & Lomb*, however, where there is no genuine dispute as to the underlying factual issue of exactly what the merchandise is, summary judgment

---

[3] This fact was confirmed by Plaintiff's counsel during oral argument on September 11, 1998.

[4] Counsel for Plaintiff clarified during oral argument that the Pergascripts are, in fact, compounds. The Explanatory Notes to the Harmonized Commodity Description and Coding System state that:

[a] **separate chemically defined compound** is a **single** chemical compound of known structure, which does not contain other substances deliberately added during or after its manufacture (including purification).

*Harmonized Commodity Description and Coding System, Explanatory Notes* at 326 (1st ed. 1986) *("Explanatory Notes")*. The *Explanatory Notes* are the official interpretation of the scope of the Harmonized Commodity Description and Coding System (which served as the basis of the HTSUS) as viewed by the Customs Cooperation Council, the international organization that drafted the international nomenclature. Thus, while the *Explanatory Notes* "do not constitute controlling legislative history," they "nonetheless are intended to clarify the scope of HTSUS subheadings and to offer guidance in interpreting its subheadings." *Mita Copystar Am. v. United States*, 21 F.3d 1079, 1082 (Fed. Cir. 1994) (citing *Lynteq, Inc. v. United States*, 976 F.2d 693, 699 (Fed. Cir. 1992)). The *Explanatory Notes* are "generally indicative of proper interpretation of the various provisions of the [Harmonized Tariff System] * * *." *Lynteq*, 976 F.2d at 699 (quoting H.R. Conf.Rep. No. 100–576 (1988), *reprinted in* 1988 U.S.C.C.A.N. 1547, 1582.).

is appropriate because the ultimate issue of classification is then entirely a legal question. *Id.* at *2. As the Court stated:

> there is nothing inherently incompatible with the summary judgment process if the court construes the relevant (competing) classification headings, a question of law; determines what the merchandise at issue is, a question of fact; and then, if there is no genuine dispute over the nature of the merchandise, adjudges on summary judgment the proper classification under which it falls, the ultimate question in every classification case and one that has always been treated as a question of law.

*Id.*

As noted above, there is no dispute concerning the basic characteristics of the Pergascripts. Both partes agree that the Pergascripts are (a) separate chemically defined compounds and (b) synthetic organic coloring matter. Further, there also appears to be no dispute concerning the end-uses of the Pergascripts.

Despite these areas of agreement, Plaintiff argues that summary judgment is not appropriate, since three "factual" issues remain as to which there is a genuine issue requiring a trial:

> (d) Is Pergascript a type of ink?
> (e) Does Pergascript embody the essential character of ink?
> (f) Is Pergascript an unfinished or incomplete ink?

Plaintiff's Statement of Material Facts as to Which There Is a Genuine Issue to Be Tried.

None of these questions, which Plaintiff describes as "factual," relate to the basic nature and characteristics of the Pergascripts (which are not in dispute). As discussed below, the undisputed fact that the Pergascripts constitute separate chemically defined compounds establishes, as a matter of law, that the Pergascripts cannot be classified in Heading 3215. Accordingly, the questions concerning whether the Pergascripts are "a type of ink," "embody the essential character of ink" or are "unfinished or incomplete ink[s]" are simply irrelevant (non-material) to the case at hand.

## B.

### THE PERGASCRIPTS ARE PROPERLY CLASSIFIED UNDER HEADING 3204

#### 1. THE PERGASCRIPTS ARE DESCRIBED BY HEADING 3204

Because there are no issues of genuine material fact in dispute between the parties, the issue in this case is one of statutory construction. Accordingly, no presumption of correctness attaches to Customs' classification decision, even though both parties agree that the Pergascripts are described by tariff Heading 3204. Rather, this Court must independently decide the meaning of tariff terms, pursuant to its statutory mandate to "reach the correct decision" regarding classification of merchandise. *Rollerblade, Inc. v. United States*, 112 F.3d 481, 484 (Fed.

Cir. 1997) ("The [CIT's] charter to 'reach the correct decision' [quoting 28 U.S.C. § 2643(b)] in classification cases would be subverted if Customs' interpretation of a classification term was given deference. Thus, the court must independently decide legal issues * * *.")

As with any statute, tariff provisions must carry out the intent of the legislature, which is determined initially by looking at the language of the statute itself. *See Nippon Kogaku (USA), Inc. v. United States*, 673 F.2d 380, 382 (C.C.P.A. 1982). Moreover, "the entire context of the statute must be considered and every effort made to give full force and effect to all language contained therein." *Dart Export Corp. v. United States*, 43 C.C.P.A. 64, 74, *cert. denied* 352 U.S. 824 (1956); *See also Philipp Overseas, Inc. v. United States*, 84 Cust. Ct. 200, 203, 496 F. Supp. 273, 276 (1980), *aff'd*, 651 F.2d 747 (1981). Consistent with these principles, General Rule of Interpretation ("GRI") 1 for the HTSUS provides that "for legal purposes, classification shall be determined according to the terms of the headings and any relative section or chapter notes * * *."

Customs classified the Pergascripts at issue under Heading 3204; specifically, HTSUS 3204.19.40 and HTSUS 3204.19.50. Heading 3204 is a principle use provision, which means that the principal use of the class or kind of goods to which an import belongs is controlling of the item's classification. *See E.M. Chemicals v. United States*, 923 F. Supp. 202, 207–08 (CIT 1996) (citing *Group Italglass U.S.A., Inc. v. United States*, 17 CIT 1177, 1177, 839 F. Supp. 866, 867 (1993)). Heading 3204 covers:

> [s]ynthetic organic coloring matter, whether or not chemically defined; preparations as specified in note 3 to this chapter based on synthetic organic coloring matter; synthetic organic products of a kind used as luminophores, whether or not chemically defined:

The plain language of this Heading, when compared to the undisputed characteristics and end-uses of Pergascripts, shows that Customs' classification of the Pergascripts under Heading 3204 was correct. Both parties agree that the Pergascripts are coloring matter specifically designed and engineered to impart images on carbonless and thermal papers. Further, both parties have stipulated that the Pergascripts are synthetic organic compounds. Accordingly, the Pergascripts fall within the plain meaning of the phrase "synthetic organic coloring matter."

Classification of the Pergascripts in Heading 3204 is also supported by the relevant chapter notes to Chapters 29 and 32. As discussed previously, both parties agree that the Pergascripts are separate chemically defined compounds. Generally, such products are classified in HTSUS Chapters 29, entitled "Organic Chemicals." As noted in Note 1(a) to Chapter 29: "[e]xcept where the context otherwise requires, the headings of this Chapter [29] apply only to * * * [s]eparate chemically defined organic compounds, whether or not containing impurities." *See also Explanatory Notes* at 449 ("**Except** as regards the goods covered by headings 32.03 or 32.04 * * * products consisting of chemically defined elements or compounds are **excluded** from this Chapter [32], and in general fall in **Chapter 28** or **29**.") Note 2 to Chapter 29, however, lists

various exceptions to this general rule of classification, including "synthetic organic colouring matter." In relevant part, Chapter Note 2(f) provides that Chapter 29 does not cover:

> [c]olouring matter of vegetable or animal origin (heading 3203), *synthetic organic colouring matter*, synthetic organic products of a kind used as fluorescent brightening agents or as luminophores (*heading No. 32.04*) * * *.

(emphasis added). Complementing these provisions, Note 1(a) to Chapter 32 states that Chapter 32 does not cover:

> *[s]eparate chemically defined elements or compounds (except those of heading 3203 or 3204*, inorganic products of a kind used as luminophores (heading 3206), glass obtained from fused quartz or other fused silica in the forms provided for in heading 3207, and also dyes and other coloring matter put up in forms or packings for retail sale, of heading 3212);

(emphasis added).

In light of the plain language of Heading 3204 and these chapter notes, it is clear that although Congress expressed a general desire to classify organic compounds in Chapter 29, it specifically intended that separate chemically defined organic coloring matter, such as the Pergascripts, be classifiable under Heading 3204. Accordingly, the Court finds that Customs did not err in finding that the Pergascripts are described by Heading 3204.

### 2. THE PLAIN LANGUAGE OF NOTE 1(a) PRECLUDES CLASSIFICATION OF THE PERGASCRIPTS UNDER SUBHEADING 3215

Notwithstanding its agreement with Customs that the Pergascripts are *described by* Heading 3204, Plaintiff argues—without itself moving for summary judgment—that the Pergascripts are more properly *classified* as "inks" under Heading 3215. Essentially, Plaintiff's argument is that Note 1(a) is concerned solely with specifying which separate chemically defined compounds are covered by, and which are excluded from, Chapter 32. Plaintiff's Response at 4. According to Plaintiff, Note 1(a) does not require that separate chemically defined compounds described by Heading 3204 also be classified therein. *Id.* Rather, it says the use of the term "of heading 3204" in Note 1(a) means that a product need only be *described by* (as opposed to *classified under*) Heading 3204 in order to fall within Chapter 32, and that once within Chapter 32 a product is to be classified in the heading which most specifically describes it (in this case, that for "ink"). *Id.* at 4–5. Plaintiff says that "[a]s used here, 'of' designates where goods are described and, *in the absence of a more specific provision*, may be classified." *Id.* at 5.

Plaintiff supports its argument by noting, *inter alia*, that in comparison to the general phrase "of heading 3203 or 3204," the HTSUS uses clear language when it specifically directs that goods be classified in a

particular heading.[5] To illustrate this distinction, Plaintiff cites Note 2 to Chapter 38, which provides that:

> Heading 3823 includes the following goods which are not to be classified in any other heading of the tariff schedule * * *.

While it is true that, in interpreting a statute, every effort should be made to give full force and effect to all language contained therein, *Dart Export Corp.*, 43 C.C.P.A. at 74, Plaintiff's attempt to give special effect to the word "of" reads into the statute an exception that is not there. By itself, the word "of" neither supports nor refutes Plaintiff's argument. Webster's Third New International Dictionary 1565 (1993) lists twenty uses for the word "of," some of which could be seen as supporting Plaintiff's argument. For instance, definition 15 states that "of" can be "used as a function word to indicate a quality or possession *characterizing* * * * a subject." *Id.* (emphasis added). However, some of these uses also weigh against Plaintiff's argument. Definition 1, for example, states that "of" can also be "used as a function word to indicate the place or thing from which anything * * * is *directed or impelled.*" *Id.* (emphasis added).

Although the word "of," when viewed in isolation, fails to resolve whether Note 1(a) refers to the *classification* or *description* of separate chemically defined organic compounds in Heading 3204, there is no such ambiguity when Note 1(a) is read as a whole. As this Court has previously noted, when engaging in statutory construction, the Court must look to the entire context of the relevant section of a statute and not merely to an individual word. *Marcor Dev. Corp. v. United States*, 926 F. Supp. 1124, 1129 (CIT 1996) (citing *King v. St. Vincent's Hospital*, 502 U.S. 215, 220 n.9 (1991). *See also Brown v. Gardner*, 513 U.S. 115, 118 (1994) ("[a]mbiguity is a creature not of definitional possibilities but of statutory context.")

In this instance, the language of the statute is not ambiguous. The plain language of Note 1(a) makes clear that separate chemically defined compounds, such as the Pergascripts, are *not* to be classified in Chapter 32 unless they are classified within certain tariff headings—specifically, Headings 3203 and 3204, as well as Headings 3206, 3207, and 3212 in certain instances. Had Congress intended separate chemically defined compounds to be classifiable in Heading 3215, it could easily have listed this heading as one of the specific exceptions to the general exclusion of such products from Chapter 32. The fact that it did not, in combination with Note 1(a), makes clear Congress' intent to exclude all separate chemically defined compounds from classification in Heading 3215.

Plaintiff's argument is also at odds with the plain language of Chapter 29. As discussed above, the HTSUS generally classifies separate chemi-

---

[5] Though not stated as such, Plaintiff's clear implication is that by not specifically using the words "classified in" (or a similar formulation), Congress meant to describe goods described by Heading 3204—but perhaps classifiable elsewhere.

cally defined organic compounds in Chapter 29, subject to a number of specific exceptions listed in Note 2 to Chapter 29. Among these exceptions is that for "synthetic organic coloring matter * * * (heading 3204)" in Chapter Note 2(f). "Inks" of Heading 3215 are not mentioned in this list of exceptions, although products from two other tariff headings within Chapter 32 (Headings 3203 and 3212) are specifically listed. Further, Note 2(f) to Chapter 29 does not use the preposition "of" when referring to Heading 3204, undermining Plaintiff's argument that the term "of," as used in Note 1(a) to Chapter 32, has the special meaning that it ascribes to it. Once again, if Congress had wanted separate chemically defined organic coloring matter to be classifiable as "inks" in Heading 3215, it presumably would have listed Heading 3215, alongside Headings 3203, 3204 and 3212, in Note 2 to Chapter 29.

Plaintiff's invocation of Note 2 to Chapter 38 also does not convince the Court that the lack of the phrase "classified in" in Note 1(a) means that Note 1(a) refers only to goods described by (as opposed to classified in) Heading 3204. By specifically excluding separate chemically defined compounds, Note 1(a) clearly reflects Congress' intent that such compounds not be classified in Chapter 32 unless they are properly classified in one of the specifically enumerated exceptions. The fact that Note 1(a) simply refers to specific headings, rather than placing the words "classified in" before such headings—without more—does not refute the clear language and intent of Note 1(a).

In this regard, it is worth noting that the context in which the term "classified in" is used in Note 2 to Chapter 38 is significantly different from the context in which specific tariff headings are referred to in Note 1(a) to Chapter 32. Note 2 to Chapter 38 sets forth a rule of inclusion, listing various products that are to be classified in Heading 3824. To make clear this rule of inclusion, Note 2 makes the general statement that these goods "are not to be classified in any other heading of the tariff schedule." In comparison, Note 1(a) sets forth a general rule of exclusion, subject to a list of specific exceptions. In the context of Note 1(a), the use of the term "classified in"—in addition to listing the specific tariff headings—would have been superfluous.

### 3. THE USE OF NOTE 1(a) TO DETERMINE CLASSIFICATION IS CONSISTENT WITH GRI 1 AND PRIOR CASE LAW

In its Response, Plaintiff argues that Defendant's construction of Note 1(a) would lead to an "anomaly" and "is contrary to the rules of statutory construction." Plaintiff's Response at 2–3. Contrary to Plaintiff's assertions, however, the idea that a chapter note may operate to exclude a product from classification in a particular tariff heading— even assuming, *arguendo*, that the product otherwise is more specifically described by that tariff heading—is consistent with the interpretative rules of GRI 1 and this Court's prior holdings.

As noted previously, GRI 1 instructs that in addition to the plain language of the headings themselves, chapter notes are to be used in fully

determining the meaning of tariff headings. In this instance, Note 1(a) provides that, even though the Pergascripts may commonly be referred to as "inks,"[6] the fact that they are separate chemically defined compounds means that they cannot be classified under Heading 3215. Any other result would be contrary to the plain language of Note 1(a) and would ignore the interpretive rules of GRI 1.

Similarly, the idea that the plain language of a chapter note may be determinative of a products' proper classification is well supported by precedent. For instance, in *Clipper Belt Lacer Co. v. United States*, 14 CIT 146, 738 F. Supp. 528 (1990), *aff'd*, 923 F.2d 835 (Fed. Cir. 1991), the plaintiff challenged Customs' classification of fasteners used to splice together sections of belting used on belt conveyers. The plaintiff claimed, *inter alia*, that the fasteners should be classified as "parts of belt conveyers" under Tariff Schedules of the United States (TSUS) item 664.10, rather than "articles of iron or steel, not coated or plated with precious metal" under TSUS item 657.25. *Id.* at 146, 738 F. Supp. at 531. By operation of an applicable Headnote (Headnote 1(ii)), however, "belts and belting" were explicitly excluded from classification as "parts of belt conveyers." The Court of Appeals for the Federal Circuit agreed with the trial court that the fasteners at issue were "parts" of items (belts and belting) excluded from classification as "parts of belt conveyers" by operation of the Headnote 1(ii), and characterized the question before it as:

> whether, notwithstanding their inclusion in Item 664.10 ["parts of belt conveyers"] which the Government admits 'factually,' or at least assumes arguendo, classification of the fasteners therein is prohibited by the headnote.

*Clipper Belt Lacer Co. v. United States*, 923 F.2d 835, 838 (Fed. Cir. 1991). In answering this question, the Court stated:

> assuming, for purposes of argument, that the belt fasteners are factually parts of conveyors, they are nevertheless precluded from classification under item 664.10, TSUS, by the exclusionary headnote.

*Id.* at 837. *See also Diachem Indus., Inc. v. United States*, No. 98–128, 1998 WL 647429, at *5 (CIT Sept. 4, 1998) (citing *H.Reisman Corp v. United States*, 17 CIT 1260 (1993)) (holding that the merchandise at issue could not be classified under an *eo nomine* tariff subheading for "Anthraquinone" because it did not fit into explanatory Headnote 1(a) to Chapter 29); *Nissho Iwai Am. Corp. v. United States*, 8 CIT 264, 602 F. Supp. 88 (1984), *a'ffd*, 771 F.2d 1502 (Fed. Cir. 1985) (holding that by virtue of an exclusionary headnote, certain "tool joints" were properly classified in a general "parts" provision, instead of a specific tariff provision for pipe fittings).

---

[6] In interpreting tariff headings, it is the tariff definition and specifications, not common or commercial meaning, that is conclusive for classification purposes. *See Marubeni Am. Corp. v. United States*, 19 CIT 1249, 1252, 905 F. Supp. 1101, 1104–05 (1995) (citing *Brookside Veneers, Ltd. v. United States*, 847 F.2d 786, 789 (Fed. Cir.), *cert. denied*, 488 U.S. 943 (1988)), *rev'd on other grounds*, 114 F.3d 202 (Fed. Cir. 1997), *vacated on other grounds*, 992 F. Supp. 1416 (1998).

4. Because Chapter 32 Note 1(a) Precludes Classification in Heading 3215, it is Irrelevant Whether the Pergascripts are Within the Common Meaning of the Term "Ink"

In relevant part, GRI 1 provides that "classification shall be determined according to the terms of the headings and any relative section or chapter notes *and, provided such headings or notes do not otherwise require, according to [the subordinate GRIs].*" (emphasis added). Accordingly, only when the relevant headings and the chapter and section notes do not themselves determine classification does one look to the subordinate GRIs in the HTSUS hierarchy. *Diachem Indus.*, No. 98–128, 1998 WL 647429, at *4; *Alcan Aluminum Corp. v. United States*, 986 F. Supp. 1436, 1442 (CIT 1997); *Pima Western, Inc. v. United States*, 915 F. Supp. 399, 403 (CIT 1996).

In light of the analysis above concerning GRI 1(a), the Court need not consider GRI 3 in resolving the question at hand. By its own terms, GRI 3 is only applicable when an article is "prima facie, classifiable under two or more headings * * *." Because Headnote 1(a) precludes the Pergascripts from classification in Heading 3215, that is not the situation here. Accordingly, even assuming, *arguendo,* that Pergascript embodies the essential character of "ink," the Pergascripts cannot be so classified. *See Clipper Belt,* 14 CIT at 160, 738 F. Supp. at 541 ("The invasive character of Headnote 1(ii) removes the need for this Court to apply General Interpretive Rule 10(ij) to the facts of this case since the relative specificity between two competing provisions is not implicated by the exclusion of the belt fasteners from classification under TSUS item 664.10 by virtue of Headnote 1").[7]

Similarly, the Court need not consider Note 3 to Chapter 32 since it, too, is irrelevant to the question at hand. In support of its argument, Plaintiff asserts that the Government's reading of Note 1(a) "completely overrides Chapter 32 Note 3" and is inconsistent with the general rule of construction that "all relevant headnotes are to be considered in determining Congressional intent." PR at 4. In relevant part, Note 3 to Chapter 32 provides:

> Headings 3203, *3204*, 3205 and 3206 apply also to preparations based on coloring matter * * *. The headings *do not apply,* however, *to * * * other preparations of heading* 3207, 3208, 3209, 3210, 3212, 3213 or *3215.*

(emphasis added).

As Defendant correctly notes in its Reply, Note 3 to Chapter 32 would be applicable in this case if the Pergascripts were preparations described in *both* Heading 3204 and Heading 3215. Reply at 7–8. In such a circumstance, the Pergascripts would be classified in Heading 3215, by virtue

---

[7] The General Interpretive Rule (GIR) at issue in *Clipper Belt*, GIR 10(ij), is similar to GRI 3(a) in that both require specificity analyses. GIR 10(ij) provided: "a provision for 'parts' of an article covers a product solely or chiefly used as a part of such article, but does not prevail over a specific provision for such part." GIR 10(ij) is analogous to Additional U.S. Rules of Interpretation 1(c).

of Note 3. *Id.* at 7. Because Note 1(a) precludes the Pergascripts from being classified in Heading 3215, however, this situation does not arise. Put another way, in this case Note 3 is simply not a "relevant headnote."

Defendant is also correct in observing that the Court's interpretation of Note 1(a) does not eviscerate or nullify Note 3 to Chapter 32. *Id.* Note 3 would still apply when the material at issue is not a separate chemically defined element or compound. In those instances, assuming that the material at issue is otherwise described in both Heading 3204 and Heading 3215, Heading 3215 would prevail by operation of Note 3.[8]

### 5. PLAINTIFF'S ARGUMENT CONCERNING THE "GENERAL" EXPLANATORY NOTES IS UNPERSUASIVE

Finally, in support of its position, Plaintiff argues:

> The Explanatory Notes to Chapter 32 make explicit that synthetic coloring and its derivatives are intended to be, and are, covered by Chapter 32. They provide:

> #### GENERAL

> It also includes * * * synthetic organic coloring matter and most of the preparations obtained from these coloring matters (paints, ceramic colors, inks, etc.)

> This is an important statement because it is part of the "General" notes explaining the scope of Chapter 32. It is not directed at heading 3204 or any other individual heading. It describes the intentions of the drafters as to how the Chapter Notes are to be understood:—Chapter 32 covers not only all synthetic coloring but all synthetic coloring preparations The lesson to be derived from Note 1(a) is that even synthetic coloring which is a separate chemically defined compound is covered by Chapter 32.

Plaintiff's Response at 7–8 (citations and footnotes omitted).

Plaintiffs point, though accurate, proves nothing. There is no dispute that synthetic coloring which is a separate chemically defined compound is covered by Chapter 32. The issue in dispute is not whether such compounds fall within the scope of Chapter 32. They do. Rather, the relevant question is under which Chapter 32 heading these compounds should be classified—an issue on which the portion of the "General" section of the *Explanatory Notes* cited by Plaintiff is silent. In fact, a later part of the same "General" *Explanatory Notes* makes it clear that products, such as the Pergascripts, are to be excluded from Heading 3215:

> Except as regards the goods covered by headings 32.03 or 32.04 * * * products consisting of chemically defined elements or compounds are excluded from this Chapter * * *.

*Explanatory Notes* at 449.

---

[8] On this point, it should be observed that separate chemically defined synthetic organic coloring matter is just one type of material described by Heading 3204.

## C.

NOTWITHSTANDING THE FACT THAT THE PERGASCRIPTS WERE PROPERLY CLASSIFIED UNDER HEADING 3204, IT HAS NOT BEEN DEMONSTRATED THAT THE PERGASCRIPTS WERE PROPERLY CLASSIFIED UNDER SUBHEADINGS 3204.19.40 AND 3204.19.50

Although Customs' decision to classify the Pergascripts under HTSUS Heading 3204 was correct as a matter of law, based on the undisputed facts before the Court, it is not entirely clear whether the Pergascripts were properly classified under Subheadings 3204.19.40 and 3204.19.50. Although the precise classification within Heading 3204 was not an issue addressed by the parties (as it was not relevant to Plaintiff's claimed alternative classification, Subheading 3215.90.15), this Court has an independent statutory obligation to verify Customs' classification decision. Specifically, 28 U.S.C. § 2643(b) provides that the Court of International Trade has an obligation to reach the "correct decision" in classification cases. *Jarvis Clark Co. v. United States*, 733 F.2d 873, 878 (Fed. Cir. 1984). To reach the "correct decision," the Court may remand the case for further review, conduct its own hearing, or examine the law and tariff schedules on its own initiative. *Id.* at 878; 28 U.S.C. § 2643(b).

Examining Customs' decision in light of this obligation, there is not enough factual information before the Court to allow it to make a final determination that Customs' classification of the Pergascripts was "correct."

The subheadings indented one space under Heading 3204 cover three categories of products: "synthetic organic coloring matter and preparations based thereon as specified in note 3 to this chapter" (3204.11 to 3204.19); "[s]ynthetic organic products of a kind used as fluorescent brightening agents" (3204.20); and "[o]ther" (3204.90). Based on the undisputed facts before the Court, the Pergascripts cannot be classified in either Subheading 3204.20 or 3204.90. The *Explanatory Notes* to Chapter 32 define "organic products of a kind used as fluorescent brightening agents" as:

> synthetic organic products which absorb ultraviolet rays and give off visible blue radiations, thus intensifying the apparent whiteness of white articles. They generally consist of stilbene derivatives.

Explanatory Notes at 455.

No evidence before the Court indicates that the Pergascripts fall within this definition—a fact confirmed by the parties at oral argument. Similarly, Subheading 3204.90 ("[o]ther") "refers to merchandise 'other' than 'synthetic organic coloring matter and preparations based thereon as specified in note 3 to this chapter' and 'other' than 'synthetic organic products of a kind used as fluorescent brightening agents.'" *E.M. Chemicals*, 923 F. Supp. at 210. As noted earlier, there is no dispute that the Pergascripts constitute synthetic organic coloring matter. As such, they cannot be classified under Subheading 3204.90.

Accordingly, the Pergascripts should be, and were, classified within one of the product categories that constitute Subheadings 3204.11 to 3204.19. These subheadings cover various dyes and pigments, as well as "[o]ther" synthetic organic coloring matter and preparations based thereon. Customs decided that the Pergascripts neither fell within any of the specific product categories for dyes and pigments (3204.11 to 3204.18), nor were they classifiable as "[s]olvent dyes and preparations based thereon" under Subheading 3204.19 (3204.19.06 to 3204.19.25). Accordingly, Customs classified the Pergascripts under the Subheadings 3204.19.40 and 3204.19.50, which cover:

| | |
|---|---|
| 3204 | Synthetic organic coloring matter, whether or not chemically defined; preparations as specified in note 3 to this chapter based on synthetic organic coloring matter; synthetic organic products of a kind used as fluorescent brightening agents or as luminophores, whether or not chemically defined (con.): |
| | Synthetic organic coloring matter and preparations based thereon as specified in note 3 to this chapter (con.): |
| 3204.19 | Other, including mixtures of coloring matter of two or more of the subheadings 3204.11 to 3204.19: |

\*    \*    \*    \*    \*    \*    \*

Other:

\*    \*    \*    \*    \*    \*    \*

Other:

| | |
|---|---|
| **3204.19.40** | **Products described in additional U.S. note 3 to section VI** |
| **3204.19.50** | **Other** |

(emphasis added)

While Customs' findings of fact are given a presumption of correctness, in this case Customs' decision to classify the Pergascripts within the basket provision of Subheadings 3204.19.40 and 3204.19.50—in lieu of the specific subheadings for "dyes" and "pigments" under Heading 3204—is not supported by any evidence before the Court. At oral argument on September 11, 1998, Defendant's counsel indicated that Customs' classification decision was likely based on a finding that, although the Pergascripts constitute a "dye," they are not any of the specific dyes listed under Heading 3204. In support of this point, Defendant's counsel referred the Court to laboratory tests which he believed were part of the record of this case.

As Plaintiff subsequently acknowledged, however, no such information has been submitted to the Court. Letter from Plaintiff's Counsel to the Court of 09/21/98. In fact, the only information addressing the proper classification of the Pergascripts within Heading 3204 is contained in ¶ 17 of Defendant's Answer, in which the Government specifically de-

nied Plaintiff's allegation that "[t]he subject merchandise is not a dye or a pigment." Complaint at ¶ 17; Answer at ¶ 17. While this statement generally supports Defendant's claim that the Pergascripts, though dyes, are not any of the specific dyes listed under Heading 3204, it is not a factual basis upon which the Court can conclude that Customs' classification was "correct."[9]

Accordingly, the Court, pursuant to 28 U.S.C. § 2643(b), denies Defendant's Motion to the limited extent that it has failed to demonstrate that its ultimate classification of the Pergascripts within Heading 3204 was, in fact, correct. This denial is without prejudice to the filing of an additional motion for summary judgment upon completion by Defendant of any further discover. To the degree that laboratory tests on the Pergascripts have already been conducted, the submission of such evidence to the Court may be sufficient to support Custom's classification decision.

IV

CONCLUSION

For the foregoing reasons, Defendant's Motion For Summary Judgment is partially granted and denied to the extent set forth herein. The parties may apply, as necessary, for any additional reasonable discovery period needed for the limited purposes set forth herein.

---

[9] In a letter to the Court, Plaintiff notes that as Defendant did not claim in its Statement of Undisputed Material Facts that the Pergascripts are dyes, this issue was not addressed by Plaintiff in its Reply. Letter from Plaintiff's Counsel to the Court of 09/15/98. Plaintiff states that "[h]ad the issue been raised, the plaintiff would have established that the fact is disputed and set forth proofs appropriate to a response to a motion for summary judgment." *Id.* Accordingly, Plaintiff asserts that "the question of whether Pergascript is a dye is a question not properly before the Court in the instant motion for summary judgment." *Id.* at 2.

Based on the undisputed facts of this case, and in light of the discussion above, the issue of whether the Pergascripts are dyes is immaterial to Defendant's claims. Even if Plaintiff could demonstrate that the Pergascripts are not dyes, its claimed alternative classification (Heading 3215) would still fail because the Pergascripts are separate chemically defined compounds not classifiable under Heading 3215.

While the issue of whether the Pergascripts are dyes is not relevant to this partial disposition of Defendant's Motion for Summary Judgment, it may be relevant in helping the Court determine the "correct" classification of the Pergascripts. To the degree that it is or may be relevant, it *is* a question properly before the Court. On this point, it should be observed that even if Customs concludes that the Pergascripts are not dyes, this determination alone would not necessarily lead to the conclusion that its classification decision was incorrect. Subheadings 3204.19.40 and 3204.19.50 cover "[o]ther" forms of "[s]ynthetic organic *coloring matter* and preparations based thereon * * *." (emphasis added). By its own terms, this category is necessarily broader than forms of synthetic organic coloring *dyes* "[o]ther" than those specifically listed in Heading 3204.